O'Mally vs. McGinn.

---

## O'MALLY vs. McGINN.

*October 21 — November 3, 1881.*

EVIDENCE.  *(1) Minutes of city council, when admissible.  (2) Construction of minute as to passage of ordinance.  (3) Proof* dehors *the record.*
CITY CHARTER: ORDINANCE.  *(4) Ordinance signed by president of council, and not by mayor, held valid.  (5, 6) Ordinance as to impounding cattle construed.*

1. The minutes of a regular meeting of the common council of the city of Neenah, written down at the time by the city clerk, and approved by the council, when verified by the clerk, are evidence of the proceedings of that body, though not taken down in a book nor subsequently copied into a bound volume, there being nothing in the city charter requiring them to be so written or copied.

2. If such minutes state that a certain ordinance "was passed" by the council, it must be presumed (in the absence of anything in the records to show the contrary) that it was passed by an affirmative vote of a majority of all the members of that body, as the charter requires.
3. Whether the passage of an ordinance can be shown by evidence *dehors* the records, not determined.
4. The charter authorizing the president of the council to discharge all the duties of the mayor during the absence of the latter from the city, the signature of such president to an ordinance must be held sufficient, where it appears that the mayor was out of the city when the ordinance was passed.
5. Under the ordinance here in question, the proper officer, finding cattle "running at large in the public streets," might pursue them to private property used as an open common (not belonging to the owner of the cattle), and there take them up; or, finding them "loose and at large" upon such open common, immediately after having been on the public streets, he might seize and impound them.
6. The mere fact that the "taking up" of the cattle by the officer was, in its inception, through the agency of another, does not render his action unlawful.

APPEAL from the County Court of *Winnebago* County.

Replevin, for cattle. The defense was, that the cattle were taken up by the defendant as chief of police of the city of Neenah, under an ordinance passed by the common council of that city May 29, 1878. Sec. 1 of this ordinance prohibited the running at large of horses or cattle upon any public street, alley, park or place within the limits of said city. Sec. 4 made it the duty of the chief of police, or any of the city police under his authority, to take up any horses or cattle found loose and at large in said city contrary to the provisions of sec. 1. Other sections provided for the release of any animal so taken up, on payment of a certain charge, and for a sale of the animal on a failure to pay. The ordinance was signed "I. W. Hunt, Acting Mayor."

On the trial (by the court alone), plaintiff objected to the admission in evidence, for the defendant, of the ordinance in question, on the ground of its invalidity; but the objection was overruled. It appeared from the evidence that the chief of

police was informed by several boys of the fact that the cattle were at large; that he sent the boys to drive the cattle to the pound; and that he did not himself see them until they had been driven for some distance toward the pound by the boys. The remainder of the evidence, as to the circumstances under which the cattle were taken up, and as to the passage of the ordinance relied upon by the defense, is sufficiently stated in the opinion.

There was a judgment for the defendant; and plaintiff appealed.

The appeal was submitted on the brief of *Elbridge Smith* for the appellant, and that of *J. B. Hamilton* for the respondent.

CASSODAY, J. It is urged that the ordinance in question did not pass the common council by an affirmative vote of all its members. In addition to the general power to make, enact, ordain, establish, publish, and enforce by penalties, ordinances, rules and by-laws for the government and good order of the city, and to give the same the force of law, the charter of the city expressly authorized the common council, by ordinances, resolutions or by-laws, " to restrain the running at large of horses, cattle, swine, sheep, poultry and geese, and to authorize the distraining, impounding and sale of the same." Section 3, sub-ch. IV of chapter 151, Laws of 1873, and subdivision 9 of said section. The same section provides that " all laws, ordinances, rules and resolutions shall be passed by an affirmative vote of a majority of all the members of the common council; and all ordinances, before the same shall be in force, shall be signed by the mayor," and shall be published, etc. Subdivision 29. The council consists of eight members — two aldermen from each of the four wards. Sections 2 and 3, sub-ch. I of chapter 52, Laws of 1875. From the records and minutes of the proceedings of the council, kept and verified by the testimony of the clerk, it appears that at a meeting

of the common council, held May 29, 1878, the ordinance in question was presented and recommended by the committee on ordinances, and, "on motion, which prevailed, the ordinance was passed by the common council."

It also appears from the minutes that seven aldermen were present and one absent; and that, the mayor being absent, one of the aldermen, being the president of the council, presided. The minutes appear to have been in writing, but were not in fact recorded or transcribed into any book, it being the habit of the clerk to record the minutes taken into a book every month. On cross examination the clerk testified that the vote was not taken by ayes and noes; that he did not know how many voted aye, but did know that several — and a majority of those present — so voted; and that he did not know of any one voting no. It is made the duty of the city clerk, by the charter, to keep the corporate seal and all the papers and records of the city, and to attend the meetings and keep a record of the proceedings of the common council; and the charter further provides that the records so kept by him shall be evidence in all legal proceedings. Section 4, sub-ch. III of chapter 151, Laws of 1873. We are not referred to any provision of the charter requiring such record of the proceedings of the meetings of the common council to be kept in any bound volume, or any compact or particular form, and we have been unable to find any such provision ourselves, although the section last referred to does require the clerk to "keep a full and accurate account of all certificates of appropriations and orders drawn on the city treasurer in a book provided for that purpose."

Thus designating that the record of the things named shall be kept "in a book provided," and then in the same section requiring the records of the proceedings of the meetings of the council to be kept, without stating how or in or upon what they are to be kept, pretty clearly indicates that there was an absence of any legislative intent to impose any restrictions in that regard. In the absence of such legisla-

tive restriction, we do not feel authorized to hold that the records of the regular meeting of the common council in question, written down at the time by the city clerk, and kept by him, should have been rejected as evidence, merely because the same had not been taken down in a book, nor subsequently copied into a bound volume. The minutes kept must necessarily be subject to correction at the next meeting of the council; and here they were approved at such meeting, and must therefore be regarded as the record of the meeting of the council in question, and, as such, competent evidence.

In *Denning v. Roome*, 6 Wend., 651, it was held that " the original minutes of a corporation of a city are competent evidence of the acts of the corporation, without further proof of their verity." See *Troy v. Railroad Co.*, 11 Kan., 519; *S. C.*, 13 Kan., 70; also, *The People v. Zeyst*, 23 N. Y., 143; *Com. v. Chase*, 6 Cush., 248; Dillon on Mun. Corp., § 304 (241).

As the minutes or records show that " the ordinance was passed by the common council," we must assume that it was passed by an affirmative vote of a majority of all the members of the common council. In *McCormick v. Bay City*, 23 Mich., 457, the charter required that ordinances should be adopted by a majority of all the aldermen, and the record showed that only nine of the ten were present, but that the ordinance in question was passed by a majority vote, and it was held that it must be presumed that the entry meant such a majority as was required by the charter. See *Lexington v. Headley*, 5 Bush, 508. Had there been any opposition to the passage of the ordinance, we must assume that it would have found its way into the minutes or records. Besides, it appears from evidence called out by the plaintiff, that no one voted against the ordinance; and it is a familiar rule of parliamentary law, that where the vote is not taken by ayes and noes, and some vote for and none vote against the proposition, all are deemed to have consented to it. *State ex rel. Posey v. Crawford Co.*, 39 Wis., 596; *Despatch Line v. Manuf'g Co.*, 12 N.

H., 205. Whether it would have been competent for the defendant to have given such parol evidence against the objection of the plaintiff, it is not necessary here to decide, as the plaintiff called out the evidence himself. A distinction is sometimes made between evidence to contradict facts stated in the record, and evidence to show facts omitted from the record. In the latter class of cases it has been held admissible, unless the statute expressly and imperatively requires the same to appear of record and makes the record the only evidence thereof. *U. S. Bank v. Dandridge*, 12 Wheat., 69, 74; *U. S. v. Fillebrown*, 7 Pet., 28; *Langsdale v. Bonton*, 12 Ind., 467; *Bigelow v. Perth Amboy*, 25 N. J. L., 297; *Troy v. Railroad Co.*, 11 Kan., 519; *S. C.*, 13 Kan., 70. In the last case cited, the court sustained the admission of parol testimony as a means of establishing in part the passage of an ordinance. Here the charter does not, in express terms, require the clerk to keep a record of *all* the proceedings, but only to "keep a record of the proceedings." Section 4, sub-ch. III of chapter 151, Laws of 1873. Cases holding a different doctrine than some of those cited may undoubtedly be found; but as there is no necessity of determining the question here, we will not pursue the inquiry further.

It is urged that the ordinance is a nullity because it was signed by the president of the council and not by the mayor. The charter provides for the election of a president of the council from the number of the aldermen, and that "in the absence of the mayor the said president shall preside over the meetings of the common council, and during the absence of the mayor from the city, or his inability from any cause to discharge the duties of his office, the president shall exercise all the powers and discharge all the duties of the mayor." Section 3, sub-ch. III of chapter 151, Laws of 1873. Here the plaintiff admitted on the trial, as appears from the record, that "the mayor was out of the city when this ordinance was passed." With this admission there can be no question, under the pro-

visions of the charter, but that the ordinance is valid without the approval of the mayor. That the ordinance was duly published seems to be conceded, and hence, in the language of the charter, it must be regarded as having "the force of law" throughout the city. Section 1 of the ordinance so adopted prohibits "cows," etc., from running "at large upon any public street, alley, parks or places within the corporate limits of the city of Neenah;" and section 4 provides that "it shall be lawful for and the duty of the chief of police of said city, or any city police under his direction, to take up any . . . cow, etc., found loose and at large in said city contrary to the provisions of section 1 of this ordinance, and the same to drive to and keep in a pound or some secure place until the same shall be released as hereinafter provided;" and then it provides how the owner may reclaim the same by paying one dollar for each head so taken up, and fifty cents for each day the same has been kept, for feeding and keeping. The ordinance seems to be fully authorized by the terms of the charter quoted, and no objection is made to it on that ground.

It is objected, however, that the cows, at the moment they were taken up, were upon what is known as the "Methodist camp-ground"— some sixty acres of land within the city limits, then open to the common and unoccupied; and it is urged that it was not a public street, alley, park or *place*, within the meaning of the charter. The title of the ordinance is: "An ordinance to prevent . . . cattle . . . from running at large in the city of Neenah." That was its sole purpose. Beyond question the cows in controversy were at the time running at large within the corporate limits, and had, just previously, been upon the public streets. The moment they were, in fact, running at large in the city in any of the public places named, there was a breach of the ordinance, and the right of seizure and impounding became perfect. To hold that such right, having once attached, entirely ceased or became suspended whenever such cattle temporarily passed from

such public places and became trespassers upon private property, would' tend to defeat the very object of the ordinance. If, under such a construction, the cattle, after being taken up and while being driven to the public pound, escaped and ran onto private property, such taking would become nugatory. The fourth section of the ordinance would seem to be much broader, and more in harmony 'with the purpose expressed in the title; for it is there made the duty of the officer to take up cows, etc., "found loose and at large in said city contrary to the provisions of section 1." It is true, the Methodist camp-ground is private property, and so, in a certain sense, are streets, alleys, etc.; but it is also open to the common, and in a certain sense may be deemed a public place. It is not the owner of the camp-ground who is raising the objection, but the owner of the cattle which were at large in violation of the law of the city. The owner of the camp-ground is not the owner of the cattle, and hence the latter cannot invoke the protection of private occupancy to defeat a public ordinance. We must hold, therefore, that it was competent for the officer, finding the cattle running at large in the public streets, to pursue them onto the open common, and there take them up; or, finding them "loose and at large" upon the open common immediately after having been at large in the public streets, to seize them there and drive them to the public pound, and there detain them until reclaimed in the manner provided. Nor can we say that the mere fact that the taking up of the cattle by the officer was, in its inception, through the agency of others, rendered such taking and withholding unlawful.

*By the Court.*— The judgment of the county court is affirmed.