## SUPERVISORS MITCHELL COUNTY v. HORTON *et al.*

1. **Board of Supervisors:** SPECIAL MEETINGS : NOTICE : WHAT SUFFICIENT. Under section 301 of the Code, six days' notice to each member of the board of supervisors of a special meeting of the board is not required where the notice is personally served, but only in cases where it is served by leaving it at his place of residence ; nor is it necessary that one week's notice of such meeting be given to the public when it is given by publication in a newspaper, but only when it is given by posting. And in this case, where personal notice of the special meeting was served on the supervisors four days prior to the meeting, and general notice was given by five days' prior publication in a newspaper, *held* that it was sufficient to make the special meeting valid.

2. ——— : ——— : VALIDITY : ESTOPPEL OF MEMBERS AND OTHERS. Where certain members of the board of supervisors had notice of a special meeting, and were present thereat, and protested against the validity of the meeting on the ground that the notice was insufficient, but they afterwards participated in the business transacted thereat, which was the revocation of an order made at a former meeting whereby a certain bridge was to be constructed, and the protesting members had been appointed a committee to contract for its construction, *held* that such members were afterwards estopped from questioning the validity of the revoking order on the ground of the insufficiency of the notice of the special meeting. Also, that one who knew of all these facts could not afterwards make a legal contract with the protesting members for the construction of the bridge.

3. ———: ———: NOTICE: PUBLICATION. A notice of a special meeting of the board of supervisors was published on slips of paper which contained nothing else except the name of the newspaper in which they were folded, with the word "Supplement" added; and the validity of the publication was objected to on the ground that the "supplement" was not sent to all the subscribers. But as there was nothing to justify the conclusion that the omission to send the "supplement" to each subscriber was other than accidental, nor that any considerable number of subscribers were affected by it, *held* that the objection was not well grounded; the rule being that if the paper is published and distributed in the usual manner, without intent to suppress any copies, it is sufficient.

4. ———: ———: POWER TO RESCIND FORMER ACTION. The board of supervisors at a regular meeting ordered the construction of a bridge and appointed a committee to contract therefor. Before any contract had been made the board, at a special meeting, reconsidered and rescinded their action in regard to the bridge. *Held* that it had power so to do, and that the members who had been appointed as the committee could not complain that they were thereby deprived of the right to contract for the construction of the bridge.

5. ———: ———: WHAT MAY BE DONE. There is no reason why business imposed upon the board of supervisors may not be transacted as properly at a special as at a regular meeting, if it be specified in the request for and notice of the meeting; excepting in cases where, from the nature of the business, or the provisions of the law in regard to it, the purpose or policy of the law, or the rights of others, require, that it be done at a regular meeting.

*Appeal from Mitchell District Court.*—HON. J. B. CLELAND, Judge.

FILED, SEPTEMBER 10, 1888.

THE petition of plaintiffs shows that during the year 1886 the board of supervisors of Mitchell county was composed of J. H. Ayers, chairman, Harry Counsell, William Penney, and defendants A. T. Tollefson and E. C. Lubiens; that at its January, 1886, session, said board appointed a committee, consisting of Ayers, Tollefson and Lubiens, to examine two bridge-sites on the Cedar river, called, respectively, "Hansen's Ford" and "McCarthy's Mill," and make construction estimates, and report at the next session of the board; that further time was given said committee at the April session, and that at the June, 1886, session a majority

of the committee reported in favor of building a bridge
at Hansen's Ford, and that an appropriation of ten
thousand dollars be made for that purpose; that said
report was adopted by a majority vote, and that Penney,
Tollefson and Lubiens were appointed a committee to
let the contract and superintend the erection of a bridge
at Hansen's Ford; that on the sixth day of July, 1886,
a special meeting of the board of supervisors was held,
and the action had at the June meeting, which adopted
the report of the committee first appointed, and
appointed another committee to let the contract for and
superintend the construction of the bridge, was recon-
sidered, and the special committee last named was
discharged; that defendant Horton was present at the
special session of the board, and had actual and full
knowledge of the action taken; that on the third day of
September, 1886, defendants Tollefson and Lubiens
entered into a contract with defendant Horton to
construct a bridge at Hansen's Ford, upon a public
highway, for the sum of $9,785; that defendants
pretended to make said contract by virtue of the action
of plaintiffs taken at the June, 1886, meeting; that
afterwards, at its regular September session, but before
work had been commenced under said contract, plaintiff
ratified the action taken at its special session in July,
and disclaimed and repudiated as without authority any
act done or contract made by Tollefson and Lubiens,
and immediately notified Horton of such action; that
Horton threatens to erect a bridge at said ford in a
public highway, and has commenced the same, and, if
permitted to continue, will greatly obstruct the highway,
and hinder and impede travel thereon. Plaintiff asks
that the pretended contract be declared void, and that
defendants be enjoined from proceeding thereunder,
and from obstructing said highway by drawing mate-
rials thereon. Copies of the report of the committee,
and the proceedings of the plaintiff, are incorporated in
the petition. The answer of defendants admits all the
proceedings and actions alleged to have been had prior

to the July session.   It also admits that all the members
of the board were present at that session, and partici-
pated in the proceedings, but it alleges that Tollefson
and Lubiens verbally protested against doing or
attempting to do any business on the ground that lawful
notice of the meeting had not been given.   It avers that
the July session was illegal, and the acts attempted to
be done thereat void, because of insufficient notice ; that
the only personal notice of that meeting given to the
members of the board was served on the second day of
July, 1886, and that the only notice of said meeting by
publication was given by printing the notice on small
slips of paper, which contained nothing else excepting
the title "Mitchell County Press Supplement," and
inclosing such slips within and attaching them to a
portion of the issue of the Mitchell County Press, a
weekly newspaper printed and generally circulated in
Mitchell county ; that the slips were not sent to all the
subscribers of said paper then residing and paying taxes
in said county, and were inserted in the issue dated
July 1, 1886, but circulated the next day.   The answer
also admits that Horton knew of the proceedings of the
July session at that time, and that they have made a
contract, as alleged, for the construction of a bridge, to
be paid for by Mitchell county.   Commencement of
work by Horton is also admitted.   A copy of the agree-
ment, and also of the request for a special session of the
board, with the notice given by the county auditor, and
proof of service, are incorporated in the answer.   An
amendment to the answer alleges that the July meeting
was not authorized by law, and that all proceedings of
plaintiff had at that time were unauthorized and void.
The plaintiff demurred to the amended answer, on the
ground that the facts therein alleged do not constitute a
defense, nor entitle the defendants to the relief
demanded.   The demurrer was sustained, and, defend-
ants refusing to further plead, a decree was rendered for
plaintiff as prayed.   Defendants appeal.

   *J. F. Clyde* and *A. L. Gove*, for appellants.

   *M. M. Browne*, for appellee.

ROBINSON, J.—I. The chief question presented for our determination is the sufficiency of the notice given of the special July session of the board of supervisors. This involves a consideration of section 301 of the Code, which is as follows: "Special meetings of the board of supervisors shall be held only when requested by a majority of the board, which request shall be in writing, addressed to the county auditor, and shall specify the object for which such special meeting is desired. The auditor shall thereupon fix a day for such meeting, not later than ten days from the day of the filing of the petition with him, and shall immediately give notice in writing to each of the supervisors personally, or by leaving a copy thereof at his residence, at least six days before the day set for such meeting. The notice shall state the time and place where the meeting will be held, and the object of it, as stated in the petition, and at such special meeting no business other than that so designated in the petition and notice shall be considered or transacted. The auditor shall also give public notice of the meeting, by publication in not exceeding two newspapers published in the county, or, if there be none, by causing notice of the same to be posted on the front door of the courthouse of the county and in two other places therein, one week before the time set therefor." No objection is made to the sufficiency of the request to the auditor, nor to the contents of the notice given by him. But it is insisted by appellants that before a legal special meeting of the board can be held, six days' notice thereof must be given to each supervisor, and seven days' notice to the public, and that this notice is jurisdictional, and cannot be waived. In this case it is shown that personal notice was given to each supervisor four days before the meeting, and that the notice by publication was given at most but five days before. An examination of the statute will show that the construction claimed for it by appellant could not have been intended by the general assembly, for the reason that it might frequently require an impossibility. It is well

1. BOARD of supervisors; special meetings: notice: what sufficient

known that when the statute was enacted the newspapers of the state were usually published as dailies or weeklies, and that dailies were published in but few counties of the state, and it is well known that this is still the case.    There may be but one paper published in a county, or, if more than one, all may have a common publication-day.    If, in such a case, there is no daily, and the petition for a special meeting should be filed with the auditor immediately after the publication of the papers, it would be impossible to publish the notice more than three or four days before the meeting, for the time of meeting must be fixed by the auditor on a date not later than ten days from the time of the filing of the petition.    Hence we conclude that the notice which must be given one week before the meeting is the one which must be posted in cases where no newspaper is published, and not the one which is given by publication. There seems to be good reason for this difference of time in the two cases, for the purpose of the public notice is to inform the public of the proposed meeting, and this may be much more successfully accomplished by publishing it for a single day in a newspaper than by posting it in the manner required for a week.    Our conclusion is further sustained by the fact that section 309 of the Revision of 1860, which corresponds to section 301 of the Code, required the notice to be inserted in a newspaper at least one week before the meeting, by making it the duty of the clerk of the board of supervisors to cause the notice "to be once inserted in the newspapers published in the county, not exceeding two [if there be such], at least one week before such meeting; but if there be no paper published in the county, a notice of such meeting shall be posted at the front door of the courthouse or usual place of meeting ; and cause one to be posted in some public place for at least a week." There was no ambiguity in this language, so far as it referred to newspaper publications,    and the statute fixed no time within which the meeting should be held. The change made by the Code must have been for a purpose, and we think it was in part to shorten the time of the

newspaper notice. There is nothing in the language of section 301 to require a different construction. Much of what we have said in regard to newspaper publication will apply to the requirements of service on the supervisors. If personal service of the notice cannot be made on the supervisor by reason of his absence from home, it is proper to allow him a longer time in which to receive the notice and prepare for the meeting than is required in case of personal service. The language of the Revision was as follows: "On the reception of such request the clerk shall immediately give notice in writing to each of the supervisors by causing the same to be delivered to such supervisor, or by leaving a copy at his residence at least six days before such meeting." In the Code the words "personally, or" are inserted after the word "supervisors," and the punctuation is so changed as to authorize a different construction. It is evident that the changes of the Code were designed to allow the holding of a special meeting on a shorter notice than was required by the Revision, and it is in harmony with the purposes of these changes to hold that less time is required where each supervisor is personally served with the notice, and when it is published in a newspaper, than where personal service is not had, and newspaper publication is not made.

We are also of the opinion that defendants Tollefsen and Lubiens are estopped from denying the legality of the special meeting. It is true, they protested against it, but their protest showed that they had knowledge of the defects, if any, which existed in the service of notice. After they had protested they participated in the meeting to the end, and strove by so doing to accomplish their purposes. Failing in that, they should not be heard to urge want of due notice in this proceeding. The case of *School Dist. v. Atherton*, 12 Metc, 105, is not in conflict with this view. In that case defendant had offered to the district, at an illegal meeting of the inhabitants, to lease a certain parcel of land. The offer was accepted by the meeting, and, Atherton afterwards

2. ——:——:
validity:
estoppel of
members and
others.

refusing to carry out his part of the agreement, an action for specific performance was brought. The court held that, as the meeting was illegal, the district was not bound by the action taken, and there was no mutuality in the contract. It further held that the defendant Atherton was not estopped to deny the legality of the meeting from the circumstance that he was present at it, for the reason that he might have supposed that it was legally called, and that he was making a valid contract. Since Tollefson and Lubiens were estopped to deny the legality of the special meeting, Horton, with knowledge of all the facts, could not make a legal contract with them. We conclude that in this case each supervisor had due notice of the meeting in July, and that the time of the newspaper publication was sufficient. This is not in conflict with the opinion in *Scott v. Union Co.*, 63 Iowa, 583. In that case there was no notice to the supervisors, nor to the public. It was an attempt to make a special meeting a part of a regular one.

II. It is urged by appellants that the notice by publication was not sufficient, for the reason that the slips containing it were not sent to all the subscribers of the paper which published it who were taxpayers of the county. It is not claimed that the notice was insufficient because printed on slips in the form of a supplement. It is not shown that the slips were omitted from any fraudulent purpose, nor is the proportion of the subscribers and taxpayers who failed to receive them shown. The number may have been very small. The statute is satisfied if the notice is published in a newspaper. It is not made a condition to a legal meeting that each subscriber receive a copy of the paper containing the notice. While a fraudulent suppression of a part of the issue might, in some cases, render the special meeting invalid, yet it would be unreasonable to hold that the accidental failure to send papers containing the notice to some of the subscribers would prevent the holding of a legal meeting. If the paper is published and distributed in the usual manner, without intent to suppress any copies, we think

3. $\frac{\quad:\quad}{\text{notice : publication.}}$

it is sufficient. There is nothing in this case to justify the conclusion that the omission to send the supplement to each subscriber was other than accidental, nor that any considerable number of subscribers were affected by it.

III. It is insisted by appellants that, conceding that the special meeting was legal, yet plaintiff had no power to reconsider at that meeting and rescind the action of the preceding meeting, for the reason that the action which ordered the construction of the bridge, and appointed a committee for that purpose, was judicial in its nature, and could not, therefore, be reviewed at a subsequent meeting. It is true that the determination to build a bridge required the exercise of a discretion. This is true of many duties which boards of supervisors are required to perform, but it does not follow that their action, in such cases, is final. In this case, the action had at the June meeting did not determine conflicting interests, nor create rights which became vested before the special meeting. The members of the committee acquired no special right to contract for and supervise the building of the bridge which they can urge in this case. It was their duty as supervisors to act for the best interests of the people of the county, and they could acquire no rights as supervisors which can defeat the performance of that duty. We see no reason for concluding that the plaintiff lost the right to reconsider its action to build a bridge, by the adjournment of the June meeting. *Pond v. Negus*, 3 Mass. 230 ; 1 Dill. Mun. Corp, sec. 228.

*4. ——:——:*
*power to*
*rescind former*
*action.*

IV. Appellants next claim that the statute does not authorize boards of supervisors to take action in regard to building bridges at special meetings. Section 303 of the Code provides that " the board of supervisors, at any regular meeting, shall have the following power, to-wit : '(18) To provide for the erection of all bridges which may be necessary, and which the public convenience may require, within their respective counties, and to keep the same in repair.' " It is insisted that because of those

*5. ——:——:*
*what may be*
*done.*

provisions the action taken at the special meeting was void. Even if we were to adopt the strict construction asked by appellant, it would not sustain his claim, for the reason that the board did not attempt to provide for the erection of a bridge at the special meeting, but to prevent it. There seems to be no good reason for holding that boards of supervisors have no power to discharge any of the duties imposed upon them by section 303, excepting at regular meetings. Occasions frequently arise calling for immediate action on the part of the board where delay would result in much loss or inconvenience to the public. The statute does not prescribe the business which may be done at special meetings, excepting that it must be such as was stated in the request for such meeting and in the auditor's notice. There is nothing in the language of section 303 which justifies the conclusion that no business therein authorized can be transacted at a special meeting, while, from the nature of the duties of supervisors, special meetings must be designed largely to meet and provide for unexpected emergencies, or to transact business which for any reason was not attended to at the regular meetings. We know of no reason why business imposed upon the board of supervisors may not be transacted as properly at a special as at a regular meeting, excepting in cases where, from the nature of the business, or the provisions of law in regard to it, the purpose or policy of the law or the rights of others require that it be done at a regular meeting. We conclude that the demurrer was properly sustained. The decree of the district court is therefore

AFFIRMED.