J. H. MOORE *et al.*, Appellees, v. THE CITY COUNCIL OF THE CITY OF PERRY, ALLEN BREED, Mayor, P. H. O'CONNER *et al.*, Councilmen, AND H. A. NASH, City Clerk, Appellants.

Certiorari to Review Action of City Council:   ADJOURNMENT OF COUNCIL BY LESS THAN QUORUM:   WHEN QUORUM PRESUMED.   A 1 meeting of the city council at which less than a quorum was present adjourned to a day certain at which time another adjournment was had; *held,* that while the first adjournment was irregular because of the absence of a quorum, it will be presumed in the absence of a showing to the contrary that a quorum was present at the second meeting, and that a regular adjournment was then had.

**Extension of City Limits:** VOTE OF ELECTORS: ADOPTION OF RESO-
LUTION BY COUNCIL. Where the question of the extension of
2 the limits of a city is submitted to a vote of the electors, the
fact that the council irregularly adopted a resolution prepara-
tory thereto will not invalidate the proceedings.

**Signing of Ordinances and Resolutions by Mayor:** VETO POWER:
PUBLICATION OF. Code Section 685 providing that the mayor
3 shall sign every resolution and ordinance passed by the council
before it becomes effective is mandatory, and a resolution in
relation to election on the question of the extension of the
city limits passed in the absence of the mayor and not pre-
sented to him for his signature or veto, but immediately pub-
lished over the signatures of the temporary officers of the
council, is invalid.

**Certiorari Proper Remedy to Review Illegal Acts of City Officers.**
4 Certiorari is the proper remedy where the officials of a muni-
cipal corporation, acting judicially, are without jurisdiction,
or are otherwise acting illegally.

*Appeal from Dallas District Court.*—HON. A. W. WILKIN-
SON, Judge.

TUESDAY, FEBRUARY 3, 1903.

CERTIORARI proceedings to review the action of the city
council of the city of Perry in extending the limits of said
city. The trial court overruled a demurrer to the petition,
and defendants appeal.—*Affirmed.*

*Shortley & Harpel* and *W. H. Fahey* for appellants.

*Edmund Nichols* for appellee.

DEEMER, J.—The defects in the proceedings of the city
council which are sought to be reviewed relate to the
legality of the meeting at which the resolution for exten-
sion was passed, the neglect and failure of the mayor and
city clerk to sign the resolution, and defects in the notice
for the election to be held on the question of extension.
The facts, as gathered from the petition, are that at a regu-
lar meeting of the council held on September 3, 1900, a
resolution for the extension of the city limits was adopted.
The council then adjourned until September 5th. On that
date the following record was made: "Council met

pursuant to adjournment of September 3, 1900. Present: Mayor Breed, Councilmen Ginn and Heaton. No quorum being present, on motion of Heaton, and seconded by Ginn, council adjourned to meet September 8th, 1900, at 8 o'clock p. m. Carried. H. A. Nash, Clerk. Approved October 2, 1900." On the 8th the council met, and adjourned until September 10th. On the 10th it again met. Present, four councilmen; the mayor and clerk being absent. O'Conner, one of the councilmen, was elected "chairman of the meeting," and one Carroll, having no connection with the city, was chosen "temporary clerk," and the records show the following proceedings: "Moved by Ginn, and seconded by Heaton, that the resolution passed September 3rd, 1900, extending the city limits, be rescinded. Ginn, Heaton, O'Conner, and Robinson voted aye. Carried. Moved by Heaton, and seconded by Robinson, that the resolution extending the city limits be passed, and that the mayor and city clerk give due notice of an election to be held on October 5th, 1900, between the hours of 7 o'clock a. m. and 7 o'clock p. m., at which time the qualified voters within the proposed limits shall have a right to vote. On such call Heaton, O'Conner, and Robinson voted aye, and Ginn voted no. Motion carried. Resolution recorded in Book of Ordinances and Resolutions."

We take it there is a clerical mistake here in the date at which the election was to be held; that it should be the 15th of October, instead of the 5th, as stated,—although neither party has seen fit to correct the error. The resolution passed at the September 3d meeting was signed by the mayor and clerk, but the one adopted at the meeting on the 10th was not signed by them. O'Conner and Carroll signed the second resolution as "acting mayor" and "acting city clerk." The proclamation and notice of election referred to a resolution passed at the meeting held September 3d, but fixed the time for the election as October 15th. A vote was had on the date so fixed, resulting in

favor of the extension as proposed. The resolution passed
September 10th was never submitted to the mayor for his
signature, nor did he ever refuse to sign it. No notice of
any of the meetings of the city council above referred to
was given, and at the meeting of September 15th there
was no quorum. These facts furnish the basis for the legal
proposition involved. The regularity of the meeting held
on September 10th is challenged for the reason that less
than a quorum of the members at the meeting of Septem-

1: ADJOURN-    ber 5th had no power or authority to direct
MENT of
council by      an adjournment until September the 8th.
less than
quorum:        The contention is that, while less than a
when quor-
um presumed.  quorum of the members of a deliberative
body may adjourn from day to day, they have no power
to adjourn to a future day certain. A sufficient answer to
this contention, conceding it to be sound, is that it affirm-
atively appears that the council held a meeting on the 8th,
at which we must presume all the members were present,
participating in the proceedings. This meeting could no
doubt be adjourned, and the adjourned session should be
treated as a continuation of the original meeting.

There is no provision in our law in any manner limiting
the business which may be considered at a special meeting.
Such a meeting may, under our Code, section 688, be called
by the mayor or any three members of the council, and at
such called meeting any legitimate business may be con-
sidered. If all the members attend such meeting, failure
to give notice thereof is entirely immaterial. Hanna v.
Wright, 116 Iowa, 275. Treating the adjournment on Sep-
tember 5th as irregular, the pleadings nevertheless show
a meeting of the council on September 8th, which we must
presume, in the absence of allegations to the contrary, was
attended by all the members of the council. This meeting
although special, could be adjourned to a fixed date
by a quorum, and, when so adjourned, the adjourned meet-
ing will be treated as a continuation of the one which was

adjourned.   Any business which might properly have been brought before the meeting on September 8th could properly be considered at the adjourned session on the 10th. This conclusion is supported by authority, and, in view of our statute, is clearly correct on principle.   See *State v. Smith*, 22 Minn. 218; *Carter v. McFarland*, 75 Iowa, 196; *Supervisors v. Horton*, 75 Iowa, 271; *Magneau v. City of Fremont*, 30 Neb. 843; *Lawrence v. Trainer*, 136 Ill. 474, (27 N. E. Rep. 197); *Beaver Creek v. Hastings*, 52 Mich. 528 (18 N. W. Rep. 250).

Of course, if these parties had a right to be heard,—as, for instance, on a question of taxation,—a different rule might obtain under the doctrine announced in *Gentle v. Board*, 73 Mich. 40 (40 N. W. Rep. 928). 2. EXTENSION of city limits: vote by electors: adoption of resolution by council. The resolution in this case was simply one of the preparatory steps to an election, at which all who were interested were entitled to express themselves, and the citizens generally had no more right to be heard on the question of the adoption of this resolution than any other.   The law does not contemplate either petitions or remonstrances before the city council, and no burdens are imposed on the taxpayer without an opportunity to be heard by casting his vote at the election called for the purpose of ultimately determining the question of extension of boundaries.   There was no such irregularity in the proceedings of the meeting on September 10th as to invalidate the proceedings.

II.   The resolution as finally adopted was not signed by the mayor.   Code, section 685, provides that: "The mayor shall sign every ordinance or resolution passed by the council, before the same shall be in force, 3. SIGNING of ordinances and resolutions by mayor: veto power: publication of. and, if he refuses to sign any such ordinance or resolution, he shall call a meeting of the council within fourteen days thereafter and return the same with his reasons therefor.   If he fails to call the meeting within the time fixed above, or fails to return

the ordinance or resolution, with his reasons as herein required, such ordinance or resolution shall become operative without such signature, and the clerk shall record it in the ordinance book with a minute of the fact making it operative. Upon such return of any such ordinance or resolution by the mayor to the council, it may pass the same over his objection upon a call of the yeas and nays, by not less than a two-thirds vote of the council, and the clerk shall certify on said ordinance or resolution that the same was passed by a two-thirds vote of the council, and sign officially as clerk." The only other relevant provisions are section 668, which provides that in the absence of the mayor or clerk the council shall appoint a temporary chairman and clerk from their own number; section 686, which provides that all ordinances shall be recorded in a book kept for that purpose, and be authenticated by the signature of the presiding officer of the council and the clerk; and section 658, which says that in cities of the second class the mayor shall be the presiding officer of the council. Under prior statutory provisions, which were not as rigid as section 685, it was held that the mayor must sign every ordinance and resolution passed by the city council. in order to give them vitality. See *Heins v. Lincoln*, 102 Iowa, 69; *Altman v. City of Dubuque*, 111 Iowa, 105.

There is a broad distinction between a requirement that the mayor shall sign ordinances simply as a means of authentication and a requirement that he shall sign as an evidence of his approval. The former requirement may well be said to be ministerial and directory only, while the latter is undoubtedly mandatory, and plainly intended, as a check against hasty, unwise, and inexpedient legislation. *Chicago, R. I. & P. Ry. Co. v. City of Council Bluffs*, 109 Iowa, 425; *People v. Schroder*, 76 N. Y. 160; *Shea v. City of Muncie*, 148 Ind. 14 (46 N. E. Rep. 138); *Blanchard v. Bissell*, 11 Ohio St. 96. The approval must

be by the mayor in office when the resolution is passed. *Altman v. City of Dubuque, supra.*

But it is contended that, as the ordinance was signed by the temporary chairman of the meeting, this is suffi‑ cient. No doubt the legislature might, in its wisdom, con‑ fer the veto power upon the acting mayor or presiding officer. *O'Mally v. McGinn*, 53 Wis. 353 (10 N. W. Rep. 515); *Saleno v. City of Neosho*, 127 Mo. 627 (30 S. W. Rep. 190, 27 L. R. A. 769, 48 Am. St. Rep. 653). But it has not done so in this state. Perhaps—although we do not decide this point—the temporary chairman might auth‑ enticate the ordinance recorded in the ordinance book under section 668, before referred to, but he is given no veto power. That is expressly lodged in the mayor. See *City of Leavenworth v. Douglass*, 3 Kan. App. 67 (44 Pac. Rep. 1099). The temporary chairman is simply the pre‑ siding officer for the time being, and is not vested with all the powers of the mayor.

According to the allegations of the petition, which must be accepted as true, the mayor was absent when the resolution was passed, and the same was never presented to him for his signature. Nor was it even signed by him. Under section 685 of the Code, he had fourteen days within which to veto or allow it to become a law without his sign‑ ature. Notwithstanding these facts, the resolution was at once signed by the temporary chairman and clerk, and re‑ corded, and on September 14th published as required by law. Notice of election as provided by law was also pub‑ lished on September 14, 21, and 28, and October 5, 1900. And the election was held on October 15, 1900. There is no authority for publishing a resolution before it becomes effective, and the law required publication for four consec‑ utive weeks in some newspaper before the matter could be submitted to the electors. Code, section 615. Until the resolution became effective, there was no authority for any publication. The resolution d̓ 1 not have vitality until

September 24, 1900, and the notice of election was, there-fore, insufficient. See, as bearing on this question, *Priestman v. Priestman*, 103 Iowa, 320.

Moreover, the statute expressly requires the clerk to record the resolution, if the mayor has refused to sign it at the end of fourteen days, in the ordinance book, "with a minute of the fact, making it operative." This was not done. On the contrary, acting on the assumption that the mayor had no voice in the matter, the resolution was immediately recorded as if operative, and the council proceeded without reference to the mayor's rights or duties. Indeed, it does not appear that he was ever requested to sign it, or to give it any further attention than to call an election. He cannot thus escape the duties of his office. Those who elected him are entitled to his deliberate judgment as to the advisability of the proposed action properly and legally expressed, and the other members of the council should not be permitted to hurry a matter through without giving the mayor the time and opportunity provided by the statute for the exercise of his prerogatives. Any other rule would be fraught with great danger, and be provocative of intolerable mischief. But it is said that the mayor approved the ordinance when he directed and signed the call for the election. Doubtless, he made up his mind that it was his duty to call the election, but he did not approve the resolution in the manner required by statute. We have seen that the statute is mandatory. So treated, it is manifest that no other form of approval than that provided by statute is good. If the statute were directory, a different question might arise. But it is not, and it will not do to say that some other form of approval will suffice. *Whitney v. City of Port Huron*, 88 Mich. 268 (50 N. W. Rep. 316, 26 Am. St. Rep. 291). It is held in *Ashley v. City of Newark*, 25 N. J. Law, 399, that a formal presentation to the mayor for his approval or veto must be made or shown. See also *Babbidge v. City of Astoria*, 25 Or.

417 (36 Pac. Rep. 291, 42 Am. St. Rep. 796). While not going
to the full extent of these cases, for it is not necessary to
do so here, it must, we think, appear in some way that
the mayor has not been entirely overlooked and disre-
garded in the matter of the adoption of ordinances and
resolutions. Where as here the matter seems never to have
been called to his attention, and no attempt was made to
follow the statute with reference to giving the resolution ef-
fect when the mayor fails to sign or to return it, we must
hold that the resolution for the election was invalid, and
that publication of an immature resolution is of no effect.

III. The other alleged defects in the notice of election
need not be considered, as what we have said disposes of
the case.

IV. *Certiorari* is a proper remedy where a council or
the officers of a municipal corporation, acting judicially,
are without jurisdiction, or are otherwise acting illegally.

4. CERTIORARI
proper rem-
edy to re-
view illegal
acts of city
officials.

The statute with reference to the extension of
city limits calls for the exercise of a discretion
on the part of the city council which partakes
of a judicial character, and its action may be
reviewed by the form of procedure adopted in this case.
*Stubenrauch v. Neyenesch*, 54 Iowa, 567; *Sullivan v. Rob-
bins*, 109 Iowa, 235; *McLachlan v. Incorported Town of
Gray*, 105 Iowa, 259; *Tiedt v. Carstensen*, 61 Iowa, 334.
*State v. City of Des Moines*, 96 Iowa, 521, is not in conflict
with these views. Plaintiffs are residents and taxpayers
of the territory proposed to be annexed, and have such an
interest that they may maintain the suit.

The defendant council undoubtedly acted illegally,
and the ruling on the demurrer is AFFIRMED.