Emil Messer et al., Appellees, v. F. E. Marsh et al., Appellants.

**MUNICIPAL CORPORATIONS:** Public Improvements—Failure of
1　Mayor to Sign Resolution. A resolution ordering the construction of a paving improvement is valid though not signed by the mayor, it appearing that the mayor was a prime mover in the enterprise and had full knowledge of the passage of the resolution from the time it was so passed.

**MUNICIPAL CORPORATIONS:** Public Improvements—Effect of Ir-
2　regularity. Jurisdiction over a public improvement, once regularly acquired by a municipal corporation, is not lost by a subsequent

irregularity which may be corrected on appeal. So held where one of the publications of notice to bidders was *before* the resolution ordering the work became effective.

MUNICIPAL CORPORATIONS: Public Improvements—Contract in re
3  Extension of Time. A provision in a contract for the construction of a municipal improvement which provides for a bona-fide extension of time in which to perform the work is valid.

*Appeal from Greene District Court.*—E. G. ALBERT, Judge.

JULY 14, 1921.

SUIT in equity by plaintiff and interveners, taxpayers, to enjoin defendants, contractors, and the city of Jefferson from carrying out a contract for construction of pavement. From decree in favor of plaintiff and interveners, defendants appeal. —*Reversed.*

*Howard & Sayers, Stipp, Perry, Bannister & Starzinger,* and *Orville W. Harris,* for appellants.

*E. G. Graham, Church, McCully & Osborn,* and *E. B. Wilson,* for appellees.

ARTHUR, J.—In February, 1920, the council of the city of Jefferson passed a resolution of necessity, under the statutes passed by the Thirty-sixth General Assembly providing for the

1. MUNICIPAL COR-  paving of main traveled highways leading out
PORATIONS:        from towns or cities which are within the cor-
public improve-
ments: failure    porate limits of the same, for paving of certain
of mayor to sign
resolution.       highways within the city of Jefferson.. The pro-
posed resolution of necessity divided the paving project into two paving districts, Nos. 7 and 8. The paving district No. 7 was approximately the mile of paving ordered in on the north of the city, and paving district No. 8 was approximately the mile of paving ordered in to the south of the city.

On March 8, 1920, a resolution was passed, ordering the construction of the improvements in said districts. At this meeting of the council, F. J. Forbes, the then mayor of the city of Jefferson, was not present, and one of the members, selected as

mayor *pro tem,* presided, and, upon the passage of the resolution for construction, the mayor *pro tem* signed the resolution. Of the five councilmen, four voted for the resolution. The councilman W. G. Bradley, who presided as mayor *pro tem,* did not vote. The original resolution so passed was not signed by F. J. Forbes, mayor. Following the passage of the resolution for construction of the proposed improvement, notice for bids on the proposed improvement was published in a newspaper, under dates March 17th and March 24, 1920. Bids were received, and a contract for the improvement was awarded to appellants F. E. Marsh & Company, which contract was entered into on the 30th day of March, 1920. This contract provided that the work was to commence not later than the 1st day of May, 1920, and to be completed by the 1st day of September, 1920, with the usual terms of penalty for delay. Little work was done under the contract prior to the 1st of September, aside from construction of some drainage work which was payable by the town, and in which the taxpayers in the proposed districts were not directly interested, and which was not the subject of special assessment. On November 3, 1920, the council extended the time of completion of the improvement in said Districts 7 and 8 to the 1st day of September, 1921. On May 7, 1921, this action to enjoin the construction under the contract was instituted. The cause was tried on its merits, and on the 31st day of May, 1921, the court entered a decree restraining the defendant contractors from further proceeding with work of construction under the contract, and restraining defendant city from levying or proceeding to collect taxes or special assessments under the contract, and entered judgment for costs against defendants. From such decree and judgment this appeal is prosecuted.

What we regard as the main questions to be determined in the case are:

(1) Is the resolution ordering the construction of the pavement invalid because it was not signed by the mayor?

(2) If the resolution ordering the construction of the pavement became operative without the mayor's signature, are the proceedings void because one of the two publications of the notice to bidders was published within the 14-day period in which the mayor could sign or veto the resolution?

There is little or no dispute in the facts. The mayor was absent from the meeting of the town council when the resolution for construction was presented for passage and passed by the unanimous vote of the council, except the vote of W. G. Bradley, who was presiding as mayor *pro tem,* and did not vote. The attack on the validity of the resolution is based on the fact that F. J. Forbes, mayor, did not sign the resolution. It appears from the evidence, without dispute, that F. J. Forbes, mayor, was in favor of and was, in fact, the chief advocate of the construction of this paving in controversy. The resolution of necessity had been adopted in February. The mayor and the council had talked the matter over, and they had all agreed upon making the improvement, and that, at their meeting on March 8th, a resolution ordering the work would be presented. At the meeting on March 8th, Forbes, mayor, was absent. The next day, the mayor knew that the resolution had been passed by the council. At the meeting of the council a week later, on March 16th, Forbes, mayor, presided, and heard the resolution read as a part of the minutes of the meeting of March 8th, and signed the record. The resolution was signed by W. G. Bradley, mayor *pro tem.* The mayor, it would seem from this testimony, was under the impression that the signing of the resolution by Bradley, mayor *pro tem,* was sufficient. It also appears from his testimony that he understood that, if he did not sign the resolution, it would become operative without his signature. On March 16th, F. J. Forbes, mayor, signed the resolution adopting plans and specifications for the construction of the work. It is manifest, from the signing of this resolution within the 14 days, that the mayor did not intend to veto the resolution of construction, but intended to permit the 14 days to run,—which he did,—and the resolution to become operative without his action. The court based its holding that the resolution of construction was invalid on *Moore v. City Council of Perry,* 119 Iowa 423, and appellees largely rely thereon. In the *Moore* case, we held that a mayor *pro tem* had no power to sign a resolution, and that the fact that he did sign it gave the resolution no force or effect. Such holding was sound. It is not contended by appellants in the instant case that the signature of W. G. Bradley, mayor *pro tem,* to the resolution gave it effect. In the *Moore* case, it seems that the

mayor did not know the resolution had been passed; therefore, his silence could not be construed as being an acquiescence in the passage of the resolution. That is, his silence could not be construed as willingness to permit the resolution to become operative by the passing of 14 days within which he might have taken affirmative action.

In *Incorporated Town of Hancock v. McCarthy*, 145 Iowa 51, in commenting on the *Moore* case, we said:

"There the mayor never had an opportunity to approve or disapprove the ordinance or resolution, and, so far as shown, never knew that the ordinance there in question had been passed."

Also, in *Rafferty v. Town Council*, 180 Iowa 1391, in commenting on the *Moore* case, we said:

"Whatever is said in *Moore v. City Council of Perry*, 119 Iowa 423, refers to action by which the council attempts to prevent the mayor from approving or vetoing ordinances, and holds that, where he fails to approve in such circumstances, there is no resolution which may be effectively published."

It clearly appears that we have read the *Moore* case to mean that the decision was based on the belief that the resolution there under consideration was not only passed in the absence of the mayor, but without his knowledge, and that the city council concealed the passage of the resolution from the mayor for the purpose of preventing the mayor from either approving or vetoing it. There is, then, the clear distinction between the *Moore* case and the instant case in that, in the instant case, the mayor was an advocate of the construction of the pavement; that he and the council had agreed that the resolution ordering the work would be adopted at the council meeting on March 8th; that, on March 9th, he knew it had been adopted; that he heard it read at the succeeding meeting on March 16th at which he presided, and signed the minutes containing it. If the distinction made by us in the later cases is not convincing, we have overruled it. In the *Hancock* case, we stated the law as it now stands, under Code Section 685, in the following language:

"A mayor may now either approve or disapprove, or he may allow an ordinance to become effective without doing either.

If he remains silent for more than fourteen days, the ordinance becomes effective *ipso facto."*

See, also, *Hardwick v. City of Independence,* 136 Iowa 481; *Miller v. City of Oelwein,* 155 Iowa 706.

In the *Rafferty* case, we made the observation that the proceeding of the town council and the acts of town officers shall be liberally construed, with a view to upholding the transaction of public business.

In *Moore v. City Council of Perry* and *Incorporated Town of Hancock v. McCarthy,* supra, it is said that the provisions of Code Section 685, that the mayor shall sign all ordinances or resolutions of the city council, or, in the event of his failure to do so, that he follow the requirements of the section, are mandatory. It is easy to see why the provisions of the statute enacted by the twentieth general assembly, Chapter 192, and under which *Heins v. Lincoln,* 102 Iowa 69, and other cases, were decided, were held to be mandatory. At that time, before the enactment of Section 685, there was no provision for an ordinance or resolution to become effective without signing by the mayor, or for passing it over his veto. But since the enactment of Section 685, providing that the ordinance or resolution may become effective in 14 days after its passage, without action of the mayor, either by signing or by veto and passage over his veto, it is a little difficult to know why the provisions could be said to be mandatory, as held in *Moore v. City Council* and *Incorporated Town of Hancock v. McCarthy,* supra. Indeed, we said in the *Hancock* case:

"A mayor may now either approve or disapprove, or he may allow an ordinance to become effective without doing either. If he remains silent for more than fourteen days, the ordinance becomes effective *ipso facto."*

Appellees argue, and the court so held, that, even if the resolution ordering the work was legally operative by reason of lapse of 14 days without the signature of the mayor, the resolution in controversy did not become operative until March 22d, and one of the publications of notice to bidders was on March 17th, and the other on March 24th, and that the council thereby lost jurisdiction to make a valid contract for the im-

2. **MUNICIPAL CORPORATIONS: public improvements: effect of irregularity.**

provement. Such position was wrong, under our holding in *Koontz v. City of Centerville,* 161 Iowa 627. In the *Koontz* case, we overruled the holding in *Comstock v. City of Eagle Grove,* 133 Iowa 589, relied upon by appellees. We said:

"So far as those precedents sustain the proposition that, where jurisdiction of proceedings for a street improvement has been once regularly acquired by the city council, * * * it may be lost by subsequent irregularity or error for which the statutory right of appeal affords an efficient remedy, they have been distinctly overruled, and the rule is now thoroughly well established that such objection is not, in itself, sufficient to constitute ground upon which to challenge the validity of an assessment."

In the instant case, there is no claim that, because one publication, the first publication of the notice, was within the 14-day limit, advantage or prejudice resulted to anyone, or that anyone was misled. In the *Koontz* case, we said:

"There is neither suggestion nor proof that the bidding was not fairly conducted, or that any bidder was misled, or that another publication of the notice would have been of the slightest advantage to anybody, or that the price at which the paving was let was in the least greater than it was fairly worth. We will not reverse on any such unsubstantial grounds."

There was no jurisdictional defect by reason of the fact that one publication of the notice was before the resolution of construction became operative. The council had duly adopted the resolution of necessity, and thereby gained jurisdiction to make the improvement. The council, by a unanimous vote, had passed a resolution ordering construction of the improvement. In the same resolution in which the council ordered the construction of the improvement, the council also instructed the clerk to advertise for bids. The part of the resolution which ordered the work became operative on March 22d, 14 days after its passage. The part ordering the clerk to advertise for bids became operative immediately upon its passage. One publication of the notice for bids was made before the resolution of construction became operative, which was not more than a mere irregularity, that did not deprive the city of jurisdiction to order the improvement.

*Priestman v. Priestman,* 103 Iowa 320, cited by appellees, is not in point. In that case it was held essential that the affidavit for publication be filed before the original notice was published. In the instant case, the city obtained jurisdiction by proper adoption of a resolution of necessity. *Koontz v. City of Centerville,* supra. The resolution ordering the clerk to advertise for bids did not require the signature of the mayor. The part of the resolution which instructed the clerk to advertise for bids was valid and operative as soon as it was passed by the council. *Miller v. City of Oelwein,* supra. The resolution ordering the work was operative at the time the city entered into the contract for the construction of the work, and every requirement of the law pertaining thereto had been fully complied with.

It is argued by appellees that the provisions for payment for the work contained in the contract do not conform to the prior proceedings, and are more advantageous to the contractors. On a careful examination of the record, we think such objection is not well taken.

Appellees also contend that the council had no power to extend the contract beyond the completion date named therein. Such contention is without merit. The contract in the specifica-

3. MUNICIPAL CORPORATIONS: public improvements: contract *in re* extension of time.

tions, which are a part of the contract, provides that:

"The city council may for reasonable and just cause, extend to the contractor additional time in which to complete the work."

Liquidated damages are also provided for in case of noncompletion of the work within a specified time. We conclude, with the lower court, that the council had power to extend the time for completion of the work. *Hubbell, Son & Co. v. City of Des Moines,* 168 Iowa 418.

For the reasons pointed out, the decree of the lower court is reversed.—*Reversed.*

All the justices concur.