## BABBIDGE *v.* CITY OF ASTORIA.

[S. C. 36 Pac. Rep. 291.]

MUNICIPAL CORPORATIONS.— City ordinances approved and signed by the
president of the city council acting in place of the mayor, who has
resigned, are a nullity, under a charter which authorizes such presi-
dent to act in the place of the mayor, and perform his duties in case of
the latter's temporary absence or disability, but confers no such right
to act when the office is vacant.

APPEAL from Clatsop: THOS. A. McBRIDE, Judge.

This is a suit in equity by J. W. Babbidge to enjoin the
defendants from selling lots one and two in block seventy-
five, McClure's Astoria, owned by the plaintiff, which lots
C. W. Loughery, as chief of police, was proceeding to sell
pursuant to certain warrants alleged to have been duly
issued for the collection of street assessments made against
said lots to defray the expenses in part of improving Court
Street in said city, and also to have such assessments con-
celed and declared void.   The claim of the plaintiff is
that the ordinances of the city upon which the collection
of the assessments in controversy is sought to be enforced
are null and void, for the reason that such ordinances
were not approved and signed as required by the charter.
The facts are, in substance, that the plaintiff is the owner
of lots one and two in block seventy-five, in McClure's
Astoria, and that such lots abut on Court Street; that the
ordinances fixing the grade and prescribing the time and
manner of improving the street were passed by the coun-
cil, and approved and signed by Isaac Bergman, as presi-
dent of the council, at the dates specified; that the city,
in making the improvement, and in proceeding to collect
the assessment against such lots, derived its authority so
to do from such ordinances; that on the fifteenth day of

April, eighteen hundred and ninety-one,. and prior to the passage of such ordinance, M. C. Crosby, who was then the duly elected and qualified mayor of Astoria, sent his written resignation of such office to the council, which resignation was accepted by that body and entered at large upon its journal; that on the twenty-eighth of the same month, at a meeting of the council, Mr. C. W. Fulton was appointed to fill the vacancy created by such resignation, but that he failed to qualify, and at the next meeting of the council formally declined the office; that on the twelfth day of November, eighteen hundred and ninety-one, but some time after the passage of such ordinance the council appointed Mr. S. E. Elmore, who immediately qualified and assumed the duties of such office, and that during the interim between Crosby's resignation and Elmore's appointment Councilman Bergman was president of the council.

Upon this state of facts, the contention for the plaintiff is that the office of mayor became vacant on the resignation of Crosby and its acceptance by the council, and that, while such office remained vacant and without an incumbent, Bergman, as president of the common council, was not authorized to approve and sign ordinances, as acting mayor, so as to put them in force, and hence, that his approval and signing of the ordinances in question would not avail to give them force or effect. The charter provides that "an office shall be deemed vacant upon the death or resignation of the incumbent" (section 27), and that a vacancy so caused "must be filled by appointment by a majority of the remaining members of the common council, to continue during the remainder of the term" (section 28), and that "any officer appointed to fill a vacancy must, within five days from the date of such appointment, qualify therefor as in the case of an officer elected, or he shall be deemed to have de-

clined, and the office considered vacant": Section 29. By force of these provisions, the resignation of Crosby created a vacancy in the office of mayor, and, as Fulton declined and failed to qualify, such office remained vacant and without an incumbent until the appointment of Elmore by the council. The charter also provides that the mayor is ex-officio president of the council, who, when present, and the council in session, shall preside over its deliberations, and, although not entitled to vote, he has authority to preserve order and enforce the rules of the council, but "if the mayor should be absent at any meeting of the council, the president of the council shall act during the meeting, or until the mayor attends, and shall perform all the duties of the mayor. The president of the council shall be elected at the first meeting of the council in January of each year, or as soon thereafter as practicable, and, in the absence or inability of the mayor, shall perform all the duties of mayor, approve and sign all ordinances, warrants, bonds, contracts, or other papers requiring the approval of the mayor" (section 34), and further, that "no ordinance passed by the common council shall go into force or be of any effect until approved by the mayor, except as provided in sections 44, 45, and 46; *provided,* that in the absence of the mayor from the city the president of the council shall have the right and power to take and approve such ordinances as may be passed during such absence" (section 43), and that "during any absence of the mayor from the city or if he be unwell or for any reason be unable to attend, the president of the council shall be the acting mayor and perform all the duties of such office during such absence or disability, except as otherwise provided in this act": Section 47. There was a decree for defendants and plaintiff appeals.                REVERSED.

*Mr. George Noland,* for Appellant.

*Mr. Frank J. Taylor,* for Respondent.

Opinion by MR. CHIEF JUSTICE LORD.

It is manifest from the language of these provisions that it is a temporary absence or disability only which authorizes the president of the council to act in the place of the mayor, and perform his duties. He is not authorized to approve ordinances or perform the duties pertaining to the office of mayor when such office is vacant and without an incumbent. It is "in the absence or inability of the mayor," or "in the absence of the mayor from the city," or "during any absence of the mayor from the city, or if he be unwell, or unable to attend," that the president of the council shall perform the duties of mayor, "approve and sign all ordinances," or "have the right and power to approve such ordinances as may be passed during such absence." Within the purview of the charter, the office of mayor is an important branch of the city government, the duties of which can only be performed by an incumbent, or some one acting in his stead when he is absent or disabled. The charter contemplates that a mayor is *in esse;* and that the office shall not be without an incumbent in case of death or resignation, for it provides that it "must be filled" by the council. So that, when a vacancy occurred by the resignation of Crosby, it was the duty of the council to appoint a mayor. To compel the performance of this duty in the interests of the public, the intent of the charter is that no business of importance shall be transacted until such duty is performed, and the vacant office provided with an incumbent. Hence, before the president of the council was authorized to act as mayor or perform his duties, there must have been a mayor *in esse* who was absent or disabled. He can only act in the place of a mayor who is

unable to act by reason of absence or inability.  These are conditions which must exist before the president acquires the right to perform the duties of mayor.  As the office of mayor was vacant when the president of the council approved the ordinances in question, his approval did not carry them into effect.

While the signature or approval of the mayor is not always essential to the validity of an ordinance, when it is regularly passed, yet, if its submission to him for approval or veto is made necessary by the express terms of the charter, before the ordinance can become law, such requirement is mandatory, and the failure to observe it is fatal to the ordinance:  Dillon on Municipal Corporations, § 331; 17 Am. & Eng. Enc. 243.  The charter provides that "No ordinance passed by the common council shall go into force or be of any effect until approved by the mayor, except as provided in sections 44, 45, and 46," etc.  These sections provide:  "Upon the passage of any ordinance, the enrolled copy thereof, attested by the auditor and police judge, shall be submitted to the mayor by the auditor and police judge, and if the mayor approve the same, he shall write upon it 'approved,' with the date thereof, and sign it with his name of office, and thereupon, unless otherwise provided therein, such ordinance shall become law, and be of force and effect":  Section 44.  "If the mayor do not approve an ordinance so submitted, he must within ten days from the receipt thereof, return the same to the auditor and police judge, with his reasons for not approving it, and if the mayor do not so return it, such ordinance shall become law, as if he had approved it":  Section 45.  "Upon the first meeting of the council after the return of an ordinance from the mayor, not approved, the auditor and police judge shall deliver the same to the council, with the message of the mayor, which must be read, and such ordinance shall then

be put upon its passage again, and if two thirds of all members constituting the council, as then provided by law, vote in the affirmative, it shall become a law without the approval of the mayor, and not otherwise ": Section 46. It is plain from these provisions, that no ordinance can become a law and go into effect unless an enrolled copy thereof duly attested, shall be submitted to the mayor, and, after it is so submitted only by his express approval indorsed upon it, or, if he does not approve it, by his refusal to return it with his reasons therefor within the time specified, or, if he veto it, by a two thirds vote of the council over such veto. An ordinance which has not been submitted to the mayor, although regularly passed, cannot become law. It must be submitted to the mayor for his action before it can go into effect. Where an act provided that every resolution of the common council of the city should be presented to the mayor for his approval or veto it was held that a formal and literal presentation must be made or shown: *State* v. *Newark*, 25 N. J. L. 399. The object of these provisions of the charter is to submit the ordinance before it goes into effect to the calm and separate deliberation and responsibility of the mayor. The ordinance must not only pass the council but it must be subjected to the scrutiny of the mayor who is clothed with power to approve or negative legislative action. This being so, when the ordinances in question were passed and submitted to Bergman as president of the council he was not authorized to approve them as the office of mayor was without an incumbent, and, while such vacancy existed the contingency of absence or disability could not exist upon which his right to act as mayor in the approval of ordinances depended, and hence that such ordinances did not become law or go into effect. As a consequence, the proceedings founded upon said ordinances are a nullity, and the decree must therefore

be reversed and the defendants enjoined from further proceedings in the premises.        REVERSED.