Argued March 23, affirmed April 13, 1915.

## STATE EX REL. v. KIRKPATRICK.

(148 Pac. 51.)

**Municipal Corporations—Mayor—Vacancies in Office.**

1. Pendleton City charter (Laws 1899, p. 711) provided that the council shall select one of its members to preside over the body and perform the duties of the mayor, in case of his absence or inability to act. Other portions of the charter provide for the filling of any vacancies in office by appointment of the mayor with consent of the council. *Held*, that, as other vacancies were so carefully provided for, the chairman of the council, in case of the death of the mayor, succeeds to the office until it can be regularly filled by election.

From Umatilla: GILBERT W. PHELPS, Judge.

In Banc.    Statement by MR. JUSTICE HARRIS.

An action was commenced upon the relation of John W. Dyer, against R. F. Kirkpatrick, for the purpose of determining who, if anyone, was the mayor of the City of Pendleton. W. F. Matlock was, in December, 1913, installed as the duly elected and qualified mayor of Pendleton, and he continued to serve as such officer until August 31, 1914, when he died. On February 4, 1914, John W. Dyer, who was at that time a councilman, was elected chairman of the common council. From the date of the death of W. F. Matlock the duties of the office of mayor were assumed and performed by John W. Dyer, and no other person claimed any right to the office until January 22, 1915. On the last-mentioned date, at a regular meeting of the common council, all the councilmen being present, the following resolution was adopted:

"Be it resolved by the common council of the City of Pendleton that whenever a vacancy, by death, resignation or otherwise, occurs or exists in the office of mayor of the City of Pendleton, the common council of the city shall, by resolution, fill such vacancy by choosing some qualified citizen of the city to be mayor thereof, who shall, when so chosen and qualified, be the mayor thereof until the next regular election for city officers, and until his successor to the mayor's office shall be elected and qualified."

Immediately thereafter a second resolution was adopted, which reads thus:

"Be it resolved by the common council of the City of Pendleton that R. F. Kirkpatrick, a citizen of said city, be, and he is hereby, chosen and selected as, and to be, the mayor of said city, to fill the vacancy now existing in the office of mayor occasioned by the death of the late William F. Matlock."

Both resolutions were voted for by all the councilmen except John W. Dyer, who voted against the resolutions, and at the time explained that he considered himself to be the mayor of Pendleton by reason of being the chairman of the common council. Immediately after the adjournment of the council Kirkpatrick filed an oath of office, and since that time has claimed to be the mayor. The judgment of the Circuit Court was favorable to Dyer, and thereupon the defendant appealed.                              AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. James A. Fee.*

For respondent there was a brief over the names of *Mr. Frederick Steiwer,* District Attorney, and *Messrs. Carter & Smythe,* with an oral argument by *Mr. Charles H. Carter.*

MR. JUSTICE HARRIS delivered the opinion of the court.

The charter of Pendleton appears in Laws of 1899, page 711. It will be necessary, first, to call attention to such parts of the charter as may be material here, because the phraseology of the organic law of the municipality is the storm center of this litigation. The government of the city is vested in a mayor and common council, consisting of eight members, who shall hold their offices until their successors are elected and qualified: Article II, Sections 1, 4.

Section 1, Article IV, provides that:

"At the first regular meeting of the common council after the first day of January following each election, or as soon thereafter as practicable, the council shall choose by ballot one of its members to preside over the council and perform the duties of mayor in the ab-

sence of the mayor or his inability to act. He shall be designated as chairman of the council, and in the absence of the mayor from the city or, if he be from any cause unable to act, said chairman of the council shall have and exercise the powers and perform all the duties of the mayor. * * ''

Section 3, Article III, reads:

''If any person who may be elected or appointed to any office under this act shall remove from the city or absent himself therefrom for thirty days or more without leave from the common council, or shall fail to qualify within twenty days after his election or appointment, the office which he held, or to which he may have been elected or appointed shall become vacant; and during the absence of any officer or his inability to act for a less time than thirty days the common council may fill the office by temporary appointment during such absence or inability, and the person or persons so appointed shall have, during their term of the office, all the power and authority of the regular incumbent.''

The filling of vacancies is provided for by Section 6, Article III:

''In case of a vacancy occurring in any of the offices provided under this act, the mayor, with the consent of the common council, shall fill such vacancy until the next regular election or the time fixed by this act for the appointment of appointed officers, and until a successor shall be elected or appointed and qualified. * * ''

The differences between the contesting parties arise from the claim of the relator that by virtue of being chairman of the common council, he became mayor automatically upon the death of Matlock, and the contention of defendant that the charter does not give any directions for filling a vacancy in the office of mayor. The defendant argues that Article IV, Section 1, of the

charter contemplates that the chairman of the council is clothed with the authority of mayor only when there is a mayor *in esse,* that from the time of the death of W. F. Matlock there was no mayor *in esse,* and therefore Dyer was not entitled to act as chief executive, citing *Babbidge* v. *Astoria,* 25 Or. 417 (36 Pac. 291, 42 Am. St. Rep. 796), in support of the conclusion urged.

The charter of the City of Pendleton does not furnish any authority for the filling of a vacancy in the office of mayor *eo nomine.* It is conceded by both parties that no language pertinent to vacancies is to be found, except in Sections 3 and 6 of Article III. The first portion of Section 3 specifies certain contingencies upon the happening of which an office shall become vacant, and the second portion appertains to a temporary vacancy for a less time than 30 days. If Dyer became mayor, upon the death of Matlock, it was because of the provisions contained in Article III, Section 6, and in Article IV, Section 1. The single method for filling a vacancy is contained in Article III, Section 6, and the procedure therein prescribed is for the mayor, with the consent of the common council, to fill such vacancy until the next regular election. If there be no mayor and no person with the powers of a mayor, then a vacancy cannot be filled because a vacancy cannot be supplied except by the combined action of the mayor and council. This section of the charter proceeds on the assumption that there would, at all times, be a mayor or some person vested with the authority of that office. Vacancies in every office are provided for in Section 6, except the single one of mayor, and since the legislature has in this section so carefully guarded against such vacancies, it is fair to conclude that the principal office of the municipality has not been forgotten, and that another section of the char-

ter designates some person who shall act as mayor. The language, ''if the mayor be from any cause unable to act,'' contained in Section 1 of Article IV, is broad enough to cover any possible contingency. The substance of that section is that, ''if the mayor be from any cause unable to act,'' then the ''chairman of the council shall have and exercise the powers and perform all the duties of the mayor.'' We therefore conclude that upon the death of W. F. Matlock the duties of the office of mayor devolved upon the chairman of the council, and Dyer, being such chairman, was therefore vested with the authority of mayor. The legislative act under discussion is perhaps anomalous, but it is harmonious withal. There are no conflicting or contradictory provisions. Taking the instrument by its four corners, and thus viewing it, leads to the conclusion that the plan of the charter contemplates that at all times the office of mayor would be filled, either by some person elected as such or by someone rightfully exercising the functions of the office. The council is commanded in advance to prepare for any possible happening by electing a chairman of the council, in order that the person so chosen may, if need be, take up the reins of government. The charter prevents any real vacancy by conferring upon the chairman of the council all the duties and responsibilities of mayor. For all practical purposes the council did select a mayor when that body elected a chairman of the council, whose right to act, however, was suspended until, from any cause, the chief executive of the city was unable to act. The organic law defining the powers of the municipality prescribed the mode by which these powers shall be exercised, and that mode is the measure of the power. One mode is prescribed for the office of mayor, and another mode for all other offices;

the former preventing a real vacancy by anticipating most, if not all, contingencies.

The conclusion reached here is not a departure from *Babbidge* v. *Astoria,* 25 Or. 417 (36 Pac. 291, 42 Am. St. Rep. 796). Every judicial expression must be read in the light of the facts upon which a conclusion is predicated. Marked and material features differentiate the case of *Babbidge* v. *Astoria,* 25 Or. 417 (36 Pac. 291, 42 Am. St. Rep. 796). The Astoria charter expressly declares that death creates a vacancy in all offices. Furthermore, in that case only one mode, applicable to all offices alike, is provided for filling a vacancy, all vacancies whatsoever being filled by the council; but in the instant case vacancies are filled by the mayor with the consent of the council.

It follows from the conclusion reached by us that John W. Dyer has been and is rightfully vested with the powers and authority attaching to the office of mayor, and that R. F. Kirkpatrick is not entitled to the office.

The judgment of the Circuit Court is affirmed.

                                        AFFIRMED.