### GEORGE R. FARWELL *vs.* CITY OF BOSTON.

Suffolk.    March 6, 7, 1906. — May 17, 1906.

Present: KNOWLTON, C. J., MORTON, LATHROP, LORING, & BRALEY, JJ.

*Constitutional Law*, Attempted exercise by Legislature of judicial power.   *Municipal Corporations.   Veto.   Boston.   Words,* "Presented."

Where on a petition for damages under a special act providing for the abolition of a certain grade crossing this court has decided that the petitioner, a part of whose land was taken, is not entitled to damages for injury to his remaining land caused by the removal of the railroad, and a judgment has been entered on his petition in accordance with this decision, whether an act of the Legislature which was passed after the entry of such judgment giving damages for property injured by reason of the removal of the railroad in the abolition of the grade crossing in question, if it became operative, would be constitutional as applicable to the parties to this petition, *quaere.*

Under the provision of the charter of the city of Boston, St. 1854, c. 448, § 47, requiring that an ordinance, order, resolution or vote passed by the board of aldermen and the common council "shall be presented to the mayor," and if not "returned by the mayor within ten days after it shall have been presented, the same shall be in force," leaving a vote with a clerk in the mayor's office in the absence of the mayor is not a presentation to the mayor within the meaning of the charter.

The charter of the city of Boston, St. 1854, c. 448, § 47, provides that an ordinance, order, resolution or vote passed by the board of aldermen and the common council "shall be presented to the mayor," and if it "shall not be returned by the mayor within ten days after it shall have been presented, the same shall be in force."   A vote accepting a certain act of the Legislature was passed by the board of aldermen and the common council of that city and on

Friday, July 3, of the year in question a certified copy of the vote was delivered to a clerk in the office of the mayor who indorsed upon it a statement that it was received on that day. The mayor was not in his office and did not see the act and the vote until Monday, July 6. On July 14, the mayor returned the vote to the board of aldermen, in which it originated, with a message purporting to be a veto of the vote. A committee of the board of aldermen reported that " this veto was not returned to the board within the time required by law " and this report was accepted. *Held*, that the veto of the mayor was made in due season, the vote not having been presented to him until July 6.

PETITION, filed August 26, 1903, under St. 1903, c. 392, for damages to the property of the plaintiff by reason of the removal of the railroad of the Old Colony Railroad Company operated by the New York, New Haven and Hartford Railroad Company, in the abolition of the grade crossing at Dorchester Avenue in Boston under the provisions of St. 1897, c. 519.

The answer, after a general denial, alleged that the petitioner in June, 1899, brought a petition against the respondent for the same cause of action, that the case was heard before a jury and damages were awarded to the petitioner, and that the petitioner is not entitled to bring a new petition for the same cause of action.

In the Superior Court the case was heard by *Lawton*, J. The former petition, referred to in the answer, was filed in the Superior Court on June 12, 1899, to recover the value of the land of the petitioner taken in abolishing the grade crossing in question and also for damages to his remaining land caused by the removal of the railroad which was used by him in carrying on the business of a kindling wood manufacturer. That case, after being tried in the Superior Court, was reported to this court upon questions of law, and on February 26, 1902, by a decision reported in 180 Mass. 433, this court decided that the petitioner was entitled to no damages for the injury to his remaining land by the removal of the railroad.

On May 27, 1903, the Legislature passed St. 1903, c. 392, as follows:

" Section 1. The city of Boston shall be liable to pay to any person owning land abutting on the line of the New York, New Haven and Hartford Railroad Company, as the same was located prior to the abolition of the grade crossing on Dorchester avenue, and having railroad connection with such railroad, and whose

land, or any part thereof, has been taken by said city for the purpose of constructing a highway, such damages to property as he has suffered by reason of the removal of the railroad and of the loss of his railroad connection therewith.

" Section 2.   Such damages may be recovered on a petition brought within three months after the acceptance of this act as hereinafter provided, in the manner provided by law for the recovery of damages for land taken for the laying out of highways in the city of Boston.

" Section 3.   This act shall take effect upon its acceptance by the city council of the city of Boston."

The facts relating to the question whether this act was accepted by the city of Boston are stated in the opinion.

The provision of the charter of the city of Boston, St. 1854, c. 448, § 47, referred to in the opinion, is in full as follows :

" Every ordinance, order, resolution, or vote, to which the concurrence of the board of aldermen and of the common council may be necessary, (except on a question of convention of the two branches,) and every order of either branch involving the expenditure of money, shall be presented to the mayor; if he approve thereof, he shall signify his approbation by signing the same; but if not, he shall return the same, with his objections, to the branch in which it originated, who shall enter the objections of the mayor at large on their records, and proceed to reconsider said ordinance, order, resolution, or vote; and if, after such reconsideration, two-thirds of the board of aldermen or common council, notwithstanding such objections, agree to pass the same, it shall, together with the objections, be sent to the other branch of the city council, (if it originally required concurrent action,) where it shall also be reconsidered, and if approved by two-thirds of the members present, it shall be in force; but in all cases the vote shall be determined by yeas and nays, and if such ordinance, order, resolution, or vote, shall not be returned by the mayor within ten days after it shall have been presented, the same shall be in force.   But the veto power of the mayor shall not extend to the election of officers required by any law or ordinance to be chosen by the city council, in convention, or by concurrent action, unless expressly so provided therein."

The respondent asked the judge to rule

1. That St. 1903, c. 392, is unconstitutional.

2. That the action of the mayor was a legal veto of the acceptance of the act.

The judge refused to make these rulings, and ordered that the case stand for trial, but being of the opinion that this interlocutory order ought to be determined by this court before further proceedings in the Superior Court, at the request of the petitioner he reported the case for such determination.

If this court should be of the opinion that St. 1903, c. 392, is unconstitutional, or that the action of the mayor was a legal veto of the acceptance of the act, the petition was to be dismissed; otherwise, the case was to stand for trial on its merits.

*L. C. Southard,* for the petitioner.

*T. M. Babson,* for the respondent.

LATHROP, J. This court having decided in *Farwell* v. *Boston,* 180 Mass. 433, that the petitioner was not entitled to compensation under the St. of 1897, c. 519, § 4, by reason of his access to a railroad being cut off, the Legislature passed the St. of 1903, c. 392, changing the rule of law laid down by the court, but making the act take effect upon its acceptance by the city council of the city of Boston.

The question of the constitutionality of the act is a delicate one, as judgment had been entered on the petition for damages originally filed by the petitioner; but it is unnecessary to consider this question.

The remaining question is whether the act was legally accepted by the city council of the city of Boston. The facts bearing upon this question are as follows:

On Monday, June 29, 1903, the board of aldermen of the city of Boston voted to accept the act; and on July 2, 1903, the common council of that city voted that the act be accepted in concurrence. On Friday, July 3, being the next day, the vote of acceptance duly certified was taken by the assistant city clerk to the office of the mayor, and there delivered into the hands of a clerk in the office, who indorsed upon it " Received July 3, 1903." The mayor was not then in his office, and did not see the act and vote until Monday, July 6, 1903.

On July 14, 1903, the mayor sent to the board of aldermen a

communication purporting to be a veto of the vote. This communication was laid on the table in the board of aldermen, and on January 2, 1904, was taken from the table and referred to the committee on public improvements, which committee on the same day reported " that in the opinion of the committee this veto was not returned to the board within the time required by law and recommending that no further action be taken." This report was accepted, and reconsideration refused.

The charter of the city of Boston, St. 1854, c. 448, in § 47, requires an ordinance, order, resolution or vote to be presented to the mayor, and provides that if an ordinance, order, resolution or vote " shall not be returned by the mayor within ten days after it shall have been presented, the same shall be in force." The case of the petitioner rests upon the assumption that the mayor did not send in his veto within ten days after the vote was presented to him, as required by the charter. This depends upon the meaning of the word " presented." We are of opinion that leaving a vote with a clerk in the mayor's office in the absence of the mayor is not a presentation to him within the meaning of the charter.

This question arose in 1868, in regard to a similar provision in the Constitution of the Commonwealth, c. 1, § 1, art. 2, which reads as follows: " And in order to prevent unnecessary delays, if any bill or resolve shall not be returned by the governor within five days after it shall have been presented, the same shall have the force of a law." The bill in that case was sent on February 10 to the secretary of the Commonwealth with whom all bills had been left for presentation to the Governor for twenty years before. The Governor was absent from the Commonwealth, and returned on February 14. On February 19 he returned the bill to the House of Representatives with his objections thereto. The House of Representatives requested the opinion of the justices of this court as to whether the bill was a law. The opinion of the justices was to the effect that the bill had not been presented to the Governor until his return. It was said: " As the duty of revisal by the governor is a personal duty, with which he alone is intrusted when his chair is not vacant, it is necessary that the bill should be laid before him personally." *Opinion of the Justices,* 99 Mass. 636.

We are of opinion that this reasoning is sound, and that it applies to the case before us. The veto of the mayor was made in due season, and the St. of 1903, c. 392, not having been accepted, the petition under the act is of no effect.

*Petition dismissed.*