## JOHN H. GALLIGAN *vs.* FRED A. LEONARD.

Suffolk. November 9, 1909. — January 7, 1910.

Present: KNOWLTON, C. J., MORTON, BRALEY, SHELDON, & RUGG, JJ.

*Municipal Corporations*, By-laws and ordinances, Mayor, Veto. *Taunton.*
*Mandamus.*

Under R. L. c. 26, § 9, which provides that an ordinance presented to the mayor of a city by the city council "shall be in force if it is not returned by the mayor within ten days after it has been presented to him," if an ordinance is presented to the mayor of a city only two days before his term of office and the terms of office of all the members of the city council expire, and the mayor neither approves the proposed ordinance nor returns it with his objections to the city council, it never takes effect.

Whether the provision of the charter of the city of Taunton contained in St. 1882, c. 211, § 22, giving the mayor of that city a veto power in regard to a certain class of ordinances, is subject to the general provision in regard to the approval of ordinances by the mayor of a city contained in R. L. c. 26, § 9, it here was not necessary to determine, as the ordinance in question was not of the class described in the charter.

Whether a writ of mandamus addressed to the chief of the fire department of a city would be granted to a member of that department to compel the respondent to place the petitioner's name on a pay roll of the department at the rate of com-

pensation provided by a certain ordinance of the city, in case the petitioner was entitled to some remedy, it here was not necessary to determine, because the alleged ordinance sought to be enforced never had been enacted.

PETITION, filed on April 16, 1909, by a member of the fire department of the city of Taunton, for a writ of mandamus addressed to the chief of the fire department of that city, commanding him to place the petitioner's name on the pay roll of the department at the rate of compensation provided by an alleged ordinance of that city, the enactment of which was denied by the respondent.

The case came on to be heard upon the pleadings and an agreed statement of facts by *Braley*, J., who ruled as matter of law that the petition could not be maintained, and ordered that the petition be dismissed with costs. At the request of the petitioner he reported the case for determination by the full court. If the ruling of the justice was right, the order was to be affirmed; otherwise, the writ was to issue.

*R. Luce*, (*L. Swig* with him,) for the petitioner.

*H. F. Hathaway*, for the respondent.

RUGG, J. This is a petition for a writ of mandamus brought by a member of the fire department of the city of Taunton to compel the chief of that department to make up its pay roll in accordance with the terms of an ordinance fixing the pay of members of the fire department. The validity of this ordinance is attacked. The decision of that question depends upon these facts: the city council of the city of Taunton passed the ordinance on December 31, 1908; it was presented to the mayor on January 2, 1909, who neither approved nor returned it with his written objections to the city council, and on January 4, 1909, his term of office and that of every member of the city council expired. R. L. c. 26, § 9, provides that such an ordinance as this shall be presented to the mayor, who, if he approves, shall sign it; if he disapproves he shall return it, with his objections, to the city council, which shall again consider it, and if two thirds of the members of each branch present and voting by yeas and nays pass it notwithstanding the objections, it shall be in force; and also, that it " shall be in force if it is not returned by the mayor within ten days after it has been presented to him." This statute applies to the case at bar, as both parties have in

their arguments assumed, for St. 1882, c. 211, § 22, which confers upon the mayor of Taunton a certain veto power, does not refer to ordinances like the one we are now considering. It is therefore not necessary to determine which statute should be followed in cases covered by the language of both. See *Copeland* v. *Springfield*, 166 Mass. 498.

The purpose of this general statute is to protect the municipality against hasty and ill considered legislation, and to secure for every measure deliberate, intelligent and enlightened review by the one officer everywhere in this Commonwealth elected by the suffrages of all the voters. It is a part of the evolution of legislation respecting the administration of cities, which has been in progress since 1821 in this Commonwealth when the first city charter was enacted. For thirty or more years, the theory of administration was to preserve the early town form of local government by substituting in part the meetings of the city council for those of the citizens in the town meeting, and by transferring the executive and administrative duties formerly devolving upon the selectmen to the mayor and members of the board of aldermen constituting a single board. In most of the early city charters the mayor was scarcely more than an official figure-head, having few substantial powers beyond those of an alderman. Experience seemed to demonstrate the necessity of clothing the mayor with greater power, and from time to time acts to this end were passed conferring upon him among other prerogatives a qualified veto. The first statute giving to the mayor any veto power was the Fall River charter, St. 1854, c. 257, § 21, but it was there confined to those subjects as to which towns might pass by-laws. The second city charter of Boston, St. 1854, c. 448, § 47, was the first to give to the mayor a general veto upon all acts of the city council. It was in substantially the same phraseology as that of the present provision of the Revised Laws. By St. 1873, c. 139, it was made permissive to the voters of each city to confer the power upon its mayor, and by St. 1876, c. 193, it was imposed by general law upon the mayor of all cities. Legislative restriction of the powers of boards of aldermen and city councils and an increase of those of the mayor has continued to grow until by the city charters enacted recently the mayor is the one executive officer,

except that in 1908 three charters with a wholly different plan of administration were passed. St. 1908, cc. 559, 574, 611. He is responsible directly to all the people, and is possessed of large administrative functions. For a collection of the various acts of incorporation of cities, in which this growth of legislative purpose may be traced, see *Wheelock* v. *Lowell*, 196 Mass. 220, 226. See also St. 1909, cc. 448 and 486. The city council has been gradually shorn of many duties at first vested in it. While generally the mayor has become, in substance as well as name, the executive representative of the municipality, the city council has been clothed only with the powers of a deliberative body and not of an executive board. It is rarely that it is confronted by an emergency demanding instant action. The language creating the qualified veto power of the mayor must be interpreted in the light of this statutory history. The several charters of the city of Taunton reflect the trend of legislation to increase the executive power of the mayor at the expense of the city council. St. 1864, c. 209. St. 1882, c. 211.

The approval or disapproval of measures passed by the city council implies reflection and study. The collection, classification and investigation of facts may be involved in its intelligent exercise. The consideration of financial ways and means and the application of sound business judgment to the conflicting demands of private interests and public necessity may be required. The statute gives to the mayor the specific time of ten days within which to decide whether he will approve or disapprove a given measure. It cannot have been the intent of the Legislature to put it in the power of the city councils to shorten this definite period or to compel the mayor to exercise these important prerogatives under the pressure of the closing hours of his term of office, without the time necessary to do so intelligently. What the Legislature has granted to him the city council cannot take away.

The review of measures passed by the city council is a personal trust reposed in the mayor. *Farwell* v. *Boston*, 192 Mass. 15. It demands individual attention and care. The results of a partial deliberation or a nebulous opinion emerging into judgment by one mayor cannot be transfused into his successor. It would be unreasonable to hold that a new mayor should take up

for five days what his predecessor has been examining for five days when the statute gives to the mayor ten days for consideration. Such a personal trust as this statute creates and imposes cannot be subdivided between two individuals. This conclusion is in accord with the only other decisions upon the point of which we are aware. *State* v. *Carr*, 67 Mo. 38. *Altman* v. *Dubuque*, 111 Iowa, 105, 112. So far as there is analogy between the present case and the veto powers conferred by the Constitution of the United States upon the President and by the Constitution of the Commonwealth upon the Governor, the result is the same. See *Opinion of the Justices*, 3 Mass. 567.

Both parties have argued, and we have passed upon the issue of the plaintiff's right. Therefore it becomes unnecessary to determine whether mandamus would lie even if the plaintiff was entitled to some remedy.

*Petition dismissed with costs.*