CHARLES W. DIMICK vs. J. EDWARD BARRY & others.

Middlesex.   November 17, 1911. — February 29, 1912.

Present: RUGG, C. J., HAMMOND, BRALEY, SHELDON, & DECOURCY, JJ.

*Municipal Corporations*, Approval by mayor, "Acting mayor." *Certiorari.*
*Way*, Public.   *Words*, "Matters not admitting of delay."

The time given to the executive officer of a city for deliberating whether he shall
    approve or disapprove an act of a legislative body of the city does not begin
    to run until the legislative act has come to him in fact, and no constructive or
    implied action falling short of a physical putting of the act before him suffices.
What is a matter "not admitting of delay" as to which under R. L. c. 26, §§ 29, 30,
    except as otherwise provided by city charters, the presiding officer of the board
    of aldermen of a city has power to act, in case of the death, resignation or ab-
    sence of the mayor or of his inability to perform the duties of his office, must be
    determined according to the usual course of judicial procedure as each case arises.
On June 7 and 8, 1910, the two branches of the city council of a city passed an
    order laying out a street.   The charter required that such an order should be
    approved or vetoed by the mayor within ten days after it was presented to him.
    The mayor by reason of illness was absent from his office when the order was
    passed and continued so until July 6.   Under the provisions of R. L. c. 26,
    §§ 29, 30, the president of the board of aldermen became "acting mayor" pos-
    sessed of "the powers of mayor only in matters not admitting of delay."   The
    order was presented to and approved by the "acting mayor" on June 10, and
    never was presented to or approved by the mayor.   The city entered upon the
    location described in the order for purposes of constructing the street on June
    1, 1911.   Seven days later an owner of land taken in laying out the street peti-
    tioned for a writ of certiorari to quash the proceedings.   *Held*, that the order was
    not a matter "not admitting of delay" and that the acting mayor had no power
    to approve it, that the error in accepting his approval and in not procur-
    ing that of the mayor was substantial and not technical, that there was no
    unconscionable delay by the petitioner, and therefore that the writ should
    issue.

PETITION, filed on June 8, 1911, for a writ of certiorari, directing
the mayor and the members of the board of aldermen and of the
common council of Cambridge to quash proceedings with regard
to the laying out of an extension of Waverly Street from Erie
Street to Pacific Street in that city.

The case was reserved for the full court by *Morton*, J., upon the
pleadings and an agreed statement of facts.   The facts are stated
in the opinion.

*A. Kendall,* for the petitioner.

*J. F. Aylward,* (*F. M. Phelan* with him,) for the respondents.

RUGG, C. J.   The point to be decided is the validity of an order passed by each branch of the city council of Cambridge on June 7 and 8, 1910, respectively, laying out a street.   The city charter required that it be approved or vetoed by the mayor within ten days after it was presented to him.   St. 1891, c. 364, § 11. The mayor was absent from his office continuously from May 6 to July 6, by reason of illness, and was unable to perform his duties. Under R. L. c. 26, §§ 29, 30, the president of the board of aldermen became "acting mayor," and possessed "the powers of mayor only in matters not admitting of delay."   The "acting mayor" approved the order on June 10, and it was never presented to nor approved by the mayor.

It has been decided that the time given to the executive officer for deliberating whether he shall approve or disapprove an act of a legislative body does not begin to run until the legislative act has come to him in fact, and that no constructive or implied action, falling short of a physical putting before him, suffices.   *Farwell* v. *Boston,* 192 Mass. 15.   See *Opinion of the Justices,* 99 Mass. 636, and *Galligan* v. *Leonard,* 204 Mass. 202.

These decisions, together with the express words of the statute and the inherent importance of the acts to be done, indicate the significance attached to the performance of official executive duties by the person elected by the people, rather than by a substitute designated in this instance in another way.   The case would be quite different if the statute required the order to be presented to the mayor within a definite time after it was passed by the city council.

The statute makes no provision for the ascertainment of "matters not admitting of delay."   Therefore, it must be determined according to the usual course of judicial procedure as each case arises.   The powers of the acting mayor are expressly limited to such matters as do not admit of delay.   While this language should not be given a narrow or refined interpretation and should be construed in view of the practical necessities of municipal administration, yet it should be given its natural force and meaning in the connection in which it is found.   The words are both plain and emphatic.   They express a definite conception of a necessity

so importunate that it cannot be resisted with reason. When a public officer undertakes to perform by way of substitution duties so definitely circumscribed, and their validity is questioned, it must appear that they are warranted and no strong presumptions exist in their favor. The irresistible public urgency which warrants the "acting mayor" in performing the functions of mayor chosen by popular election might be manifested in various ways.

Cases might arise where it would be apparent as matter of law upon the face of the papers that the approval of the order was a matter "not admitting of delay." Such an inference might be drawn respecting a warrant for an election or an appropriation of money to be used for a Fourth of July celebration or a corporate anniversary, or like orders where time appears to be of the essence of the subject. Appropriations necessary for immediate payment of fixed charges of various municipal departments would come within this rule. The nature of the order might stamp it as an emergency measure requiring instant attention. Impending disaster, threatened disorder, public pestilence, devastation by flood or fire illustrate the range of subjects of this character. The layout of a public way, although based upon an adjudication that common necessity and convenience require it, usually does not fall within any of these classes. While it is conceivable that an exigency might demand it, there is nothing to indicate that in the case at bar. The city council might vote that any particular order was of a nature not admitting of delay in executive determination as to its wisdom. While this would not be conclusive, in most instances it would be strongly persuasive of the existence of pressing need. Universal acquiescence by public officers charged with the performance of official duties coupled with the acquirement of rights in reliance upon the validity of the act might create a presumption in favor of the existence of the pressing necessity. *Burrage* v. *County of Bristol,* 210 Mass. 299. Instances may arise when the delay of public business required for awaiting the mayor would be so great as to be unreasonable and to create a situation calling for action by the acting mayor. These would be likely to occur in the ordinary conduct of the administrative affairs of the city far more frequently than in the approval of acts of its legislative body.

There is force in the argument that the question whether a

matter admits of delay or not is an administrative one and must in the nature of things be decided by the officer called upon to act; that it relates to public affairs of importance which ought not to be held in doubt as to their validity until there can be a determination by the courts; that public officers are assumed to act in good faith and that all reasonable presumptions should be drawn in favor of the existence of facts necessary to constitute a legal performance of duty. The adoption of this rule of construction in substance would leave the existence of the exigency requiring action by the acting mayor to his final determination in most instances. The extremely limited power conferred by the statute does not seem to us to indicate a legislative intent to leave a question deemed so important to the conscience of persons clothed temporarily with a power, for the exercise of which they were not primarily selected. The mayor is the one designated by law to be the executive of the city. It is not a mere passing incident which enables another to supplant him, but a pressing urgency of an unusual kind. These two circumstances are emphasized by the statute and lead us to the conclusion stated.

The case at bar comes within none of these principles. There is nothing in the record to indicate that the health of the mayor on June 10 was such that he was not reasonably expected to resume his duties in the near future. In fact, he did return to his public work within four weeks. For aught that appears, the order might well have waited this length of time without detriment to the public welfare. It cannot be said upon this record that it was a matter "not admitting of delay."

This is not an error so technical or insubstantial as not to warrant issuance of the writ of certiorari. Exercise of the power of eminent domain is a governmental function of importance, both to the landowner whose property is taken and the public whose money must pay for it. In this instance the decision of the designated public officer was wanting. There was a failure to comply with an essential provision of the statute which involved the application of sound business judgment and executive discretion upon a matter affecting both public and private interests. It may be that a different result would have been reached if the statute had been followed. *Bowditch* v. *Boston,* 168 Mass. 239, 243. *Warren* v. *Street Commissioners,* 181 Mass. 6.

The defense of laches has not been relied upon. Upon the facts disclosed in this record it was not apparent, until the city entered upon the land in question and constructed edgestones at a street junction on or about June 1, 1911, that the city might not let the alleged location lapse under R. L. c. 48, § 92. This petition was brought on June 8, 1911. There is nothing to show that any substantial expenditures have been made or that the rights of other persons have been materially affected.

*Writ of certiorari to issue.*