CHARLES F. DOOLING *vs.* CITY COUNCIL OF FITCHBURG.

Suffolk.    September 27, 1922. — October 10, 1922.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & CARROLL, JJ.

*Municipal Corporations,* Plan B form of charter, City council, Referendum. *Words,* " Any measure."

The referendum provided by G. L. c. 43, § 42, respecting "any measure" finally passed by the city council of a city which has adopted Plan B form of charter, is limited to action by the city council which is within the powers vested in it by law.

The general scheme of G. L. c. 43, §§ 18–44, 55–63, comprising the Plan B form of charter for cities, confines the sphere of action of the city council, with but few exceptions, to legislative acts and does not permit the council to encroach upon executive or administrative duties, which are to be performed by the mayor or under his direction or by other municipal boards, committees or officers.

Orders of the city council of a city with the Plan B form of charter, ratifying and confirming action of one of its committees in advertising for bids and accepting a bid, not the lowest, relative to the construction of a school house, awarding the contract in accordance with the vote of the committee, and authorizing and directing the mayor to execute with the successful bidder a contract definitely described and identified, are not within the sphere of action vested in the council and are not subject to the provisions of G. L. c. 43, § 42, relating to the referendum.

PETITION, filed on July 15, 1922, for a writ of mandamus ordering the president of the city council of Fitchburg "to entertain a motion to reconsider" three votes of the council, described in the opinion, as to contracts relating to the construction of a school house, as to which petitions for referenda had been filed, and that the city council be ordered to consider and treat the three votes

or orders as suspended and that it be further ordered to annul, repeal or rescind its previous action on the votes or orders, and, if such votes or orders be not annulled, repealed or rescinded, that the city council be ordered to submit the same to a vote of the qualified voters of the city of Fitchburg either at the next regular city election, or at a special election which might, in the discretion of the city council, be called for that purpose.

The case was reserved by *Crosby*, J., upon the petition, answer, and an agreed statement of facts for determination by the full court.

*J. H. Walsh, Jr.,* for the petitioner.

*C. T. Flynn,* for the respondent.

RUGG, C.J.   This is a petition for a writ of mandamus to compel . the city council of the city of Fitchburg to comply with the municipal referendum law as to certain orders passed by the city council. The pertinent facts are that at the time of the events here in issue, the city charter of Fitchburg was Plan B of St. 1915, c. 267 (see now G. L. c. 43, §§ 18 to 44 and 55 to 63).   The city acquired land, selected an architect and adopted plans and specifications for the erection of a new school house.   Thereafter a committee of the city council known as the committee on city property, advertised for four sets of bids as to the school house, one for its erection, another for its plumbing, the third for its electric wiring and the fourth for its heating and ventilation.   The committee voted to award the contract for the erection of the school house to the corporation whose bid was lowest and the other three contracts to persons who were not the lowest bidders.   The committee presented to the city council at its next meeting an order ratifying and confirming the action of the committee in advertising for and accepting the bids, which was adopted.   Other orders were adopted at the same meeting awarding each of the four contracts in accordance with the vote of the committee on city property and authorizing and directing the mayor to execute with each successful bidder a described and identified contract.

No referendum petition was filed as to the order concerning the contract for the erection of the school house, but referendum petitions in form complying with G. L. c. 43, § 42, were seasonably filed as to the orders authorizing and directing the mayor to execute the other three contracts.   The city council refused to re-

consider these three orders and declines to submit any of them to vote at the next city election on the general ground that the referendum is not applicable to them.

It is provided by G. L. c. 43, § 42 (formerly St. 1915, c. 267, Part I, § 42), that upon compliance with its terms there shall be a referendum respecting "any measure" finally passed by the city council of cities which have adopted Plan B of city charter. "Measure" is defined by § 37 of the same chapter to be "an ordinance, resolution, order or vote." It is manifest that these words, although of broad signification, are necessarily limited to subjects vested by law in the city council. It cannot have been the purpose of the General Court to require or to permit the referendum or the initiative (for in this particular the provisions as to municipal initiative are the same as those as to municipal referendum) touching subjects wholly outside the field of authorized action by the city council. Such a futile intention cannot be imputed to the General Court.

The form of city charter known as Plan B, establishes a city government whose chief officer is the mayor, and whose legislative powers are lodged in the city council. G. L. c. 43, §§ 58, 59. Numerous sections of this chapter disclose the plain aim to centralize executive authority and administrative responsibility in the mayor and to confine the city council to legislative functions. It conforms thus to the recent tendency in the distribution of municipal business among city officers. *Galligan* v. *Leonard*, 204 Mass. 202. *Murphy* v. *Mayor of Boston*, 220 Mass. 73, 76.

The sphere of action of the city council of a city with Plan B charter is rigidly confined to legislation with possible exceptions not here material, and cannot encroach upon executive or administrative duties, which are to be performed by the mayor or under his direction or by other municipal boards, committees or officers. This is required by the general scheme of the statute as well as by its detailed provisions.

The orders of the city council as to which the referendum is sought in the case at bar are clearly executive and not legislative in their nature. A direction to an officer to sign a specified contract with a named person to do a defined thing for a specified price is not a legislative act. It is in form a direction from a superior to an inferior to perform a designated duty. It is not the

laying down of a rule, a principle or a law by which the conduct of a public officer may be guided. It is an act of legislation to authorize the construction of a public building, to set a boundary to its cost and to provide money to pay for it. But it is an executive act to select a contractor, to agree with him as to the thing to be done, the precise price, the terms of payment, and the numerous other conditions incident to a building contract. Orders of the character here in question covered by reference to a dated contract every detail of the agreement to which the city was to become a party. Nothing was left to the discretion or the judgment of the mayor save to approve the sureties or the security upon the bond of the contractor for the performance of the terms of the contract. Such orders in substance and effect are the making of the contract and leave to the mayor only the ministerial duty of affixing his name to give it formal legal validity. No nicety of definition is required to demonstrate that this is not legislation. The passage of these orders therefore was not within the sphere of action vested in the city council under Plan B of city charter in G. L. c. 43. Not being "measures" within the jurisdiction of the city council, the referendum provisions of that act are not applicable to them. *McMinn* v. *Mayor of Cambridge,* 225 Mass. 104. This is the necessary result of a correct interpretation of the terms of the statute.

As a matter of practical administration of municipal affairs this interpretation is the only one which would render the referendum a workable measure. If every dissatisfied bidder or disappointed applicant for municipal work could invoke the machinery of the referendum of the statute, thereby suspending the taking effect of the measure thus assailed, efficiency and economy in the business administration of a city would be seriously affected. This consideration has led courts of some other jurisdictions to go far in restricting municipal referendum to legislative acts. *Hopping* v. *City Council of Richmond,* 170 Cal. 605. *Brazell* v. *Zeigler,* 26 Okla. 826. *Long* v. *Portland,* 53 Ore. 92, 100, 101. See *Erwin* v. *Jersey City,* 31 Vroom, 141, 145; *Huntingdon Borough* v. *Huntingdon Water Supply Co.* 258 Penn. St. 309, 315.

It is not relevant to consider the terms of pre-existing ordinances of the city of Fitchburg respecting the making of contracts, for the reason that no such ordinances can override the statute by

attempting to confer powers upon the city council forbidden by the statute. The ordinances continued in force by St. 1915, c. 267, Part I, § 4 (see now G. L. c. 43, § 4), are only those not incompatible with the provisions of the statute. Others are superseded by the statute itself. *Mayor of Cambridge* v. *Cambridge,* 228 Mass. 249.

*Petition dismissed.*