FRANC W. ALTMAN *et al.* v. CITY OF DUBUQUE and H. B. GNIFFKE, CITY TREASURER, Appellants.

**Ordinances:** IMPLIED REPEAL BY STATUTE. Revised Ordinances Dubuque, chapter 31, declares the manner in which the streets may be improved as authorized by its special charter.    Acts Twenty-second General Assembly, chapter 20, 14, makes the provisions of Acts Twentieth General Assembly, chapter 20, declaring the manner in which streets of cities of the first class shall be improved, applicable to cities organized under special charter, and section 2 provides that nothing contained therein shall repeal any law in existence granting authority to cities under special charter, but that existing laws shall be deemed cumulative.    *Held,* that since the authority of the city of Dubuque to improve its street was derived from its special charter, and the authority to exercise it in a particular manner was derived from the ordinance, the improvements of streets in such city under such ordinance, before the adoption of an ordinance to carry into effect the provisions of Acts Twenty-second General Assembly, chapter 14, was valid, though a different conclusion might have been reached were it not for said section 2 of said act of the Twenty-second General Assembly.

APPROVAL BY MAYOR ESSENTIAL. Revised Ordinances Dubuque, chapter 31, requires that all street improvements shall be by resolution of the city council.    Acts Twentieth General Assembly, chapter 192, requires that a mayor of a city of the first and second class shall sign or veto and return resolutions passed

by the city council before the same shall take effect or be in force, and Acts Twenty-second General Assembly, chapter 2, makes such provisions applicable to cities organized under special charter. *Held*, that such ordinance was mandatory, and hence, where a mayor of such city organized under special charter failed to sign or veto and return to the city council for further action a resolution authorizing street improvements, the city had no power to make the same, and assess a special tax for the payment thereof.

*Mayor elected after his predecessor has failed to approve ordinance.* The city council had no power to authorize or direct a mayor subsequently elected to sign such ordinance after the term of office of the mayor in office at the time the ordinance was enacted had expired.

*Appeal from Dubuque District Court.*—HON. J. L. HUSTED, Judge.

FRIDAY, APRIL 13, 1900.

FRANC W. ALTMAN and twenty others, owners in severalty, of lots and parts of lots abutting on Grandview avenue in said city, bring this action in equity to cancel and discharge as against them and their respective lots a certain special tax levied to pay for paving said avenue, and to perpetually enjoin the collection of said tax. As grounds for said relief they allege a want of authority in the city to make said improvement, and a disregard of the law in many particulars, only some of which are now urged, and which alone require consideration. It is sufficient to say of the answer that it puts in issue the material allegation of the petition. Decree was rendered granting the relief prayed. Defendants appeal.—*Affirmed.*

*Duff & Maguire* for appellants.

*D. E. Lyon* and *Henderson, Hurd, Lenehan & Kiesel* for appellees.

GIVEN, J.—The city of Dubuque exists under a special charter, which gives it control over its streets. Chapter 31

of its Revised Ordinances, in force since 1888, provided for improving the streets, etc., specifying in detail the manner in which the city should proceed.  On March 2, 1891, the city council, acting under authority of this ordinance, adopted a resolution as follows: "Resolved by the city council of the city of Dubuque:  That Grandview avenue, between Delhi and South Dodge streets, be graded and macadamized in center 40 feet as per plan recommended by the street committee, in conformity with the ordinance upon that subject.  That the city engineer be, and he is hereby, directed to make the necessary plans and specifications for said improvement, and the city recorder directed to give the proper notice for bids and proposals for the performance of the work; the macadamizing to be done at the expense of the owners of the abutting property, including the Key City Electric Railway Company.  Grading to be bid in total.  I. S. Cleminson.  Approved Sept. 30, 1897.  T. T. Duffy, Mayor."  Notice to contractors was published in the *Dubuque Daily Telegraph* on the 1st day of April, 1891, "that proposals would be received until 4 o'clock p. m. of Saturday, Apr. 4, 1891."  A bid, accompanied with a bond, was received from Con Ryan, Jr., proposing to furnish all the materials and do all the work "according to the foregoing plans and specifications.  Grading in total, $6,700.  Macadamizing per sq. yd. 54 cents."  On the 9th day of April, 1891, Con Ryan, Jr., and R. W. Stewart, mayor, entered into a written contract for the making of said improvement "according to the plans and specifications prepared by M. Tschirgi, Jr., City Engineer, of said city, and now on file in the office of the city recorder," which were made part of the contract.  Con Ryan, Jr., gave bond for the performance of the contract.  The specifications referred to were approved by the city engineer and committee on streets March 10, 1891.  They require that the avenue "shall be brought to the proper grade lines as directed by the city engineer," and that bidders "include in price for macadam the cost of rolling

same by the city at 5 cents per sq. yd." They further re-
quired as follows: "The macadamizing shall consist of: (1)
A bed of macadam broken to pass through a four (4) inch
ring; to be eight inches deep at the center of the street, and
four inches deep at the edge next to the gutters; to be
smoothly rounded to the shape of the street as per plan and
sec. in the office of the city engineer, said plan and sec.
making a part of these specifications. This part of the work
shall be subject to examination by the committee on streets
and engineer before proceeding with the work. (2) A bed
of macadam broken to pass through a two (2) inch ring; to
be 7 in. deep at the center of the street, and 5 in. deep at the
edge next to the gutters; to be smoothly rounded to the shape
of the street according to the above specified sec. In this
bed no thin layer soft quarry rock will be allowed. After
the work has been approved by the committee on streets and
engineer, it shall be thoroughly rolled, then covered with one
inch of gravel and thoroughly rolled in as before. Stone
for sec. course of macadam to consist of the best hard lime-
stone, subject to the approval of engineer, and must be
broken to proper size before hauling onto the street." The
contract also provided that the improvement be completed on
or before the fifteenth day of August, 1891, "to be subjected
to the inspection and rejection of the committee on streets and
the city engineer. Mr. Ryan proceeded to make the improve-
ment, but whether as required by the contract and specifica-
tions is in issue. The city caused notice to be served Sep-
tember 28, 1891, on plaintiffs and others to appear on Oc-
tober 5, 1891, to show cause why a special assessment should
not be made against their property to pay for said
improvement. On November 2, 1891, the city coun-
cil adopted an ordinance (chapter 32) entitled as fol-
lows: "An ordinance to provide for giving effect to the pro-
visions of chap. fourteen (14) of the acts of the Twenty-
third G. A. of the state of Iowa, and making provision with
respect to contracts for paving and curbing streets, and the

construction of sewers, the collection of assessments, and the issuance of bonds or certificates by the city of Dubuque to pay for such improvements." On the same day—November 2, 1891—the council passed a resolution assessing a special tax in amounts specified on the properties of plaintiffs and others, to pay for said improvement, of which notice was published November 25, 1891. On November 18, 1891, the council passed a resolution allowing said special tax to be paid in seven installments, as provided by ordinance. On the same day a resolution was passed authorizing the mayor to issue bonds of the denomination of five hundred dollars each under the ordinance adopted November 2, 1891, for the purpose of providing for the payment of the costs and expenses of improving the streets specified, including Grandview avenue, which costs and expenses aggregated forty-six thousand dollars. No effort appears to have been made to collect the tax in question until November 30, 1896, when the city treasurer gave notice for the sale of the properties for the payment of the tax, "as provided by resolutions and ordinances of the city of Dubuque." The bonds mentioned above were issued, and have since been paid out of money collected by special assessment; the bonds for the improvement of Grandview avenue being paid out of assessments collected on other streets, but all out of the special assessment fund. The bonds did not recite the improvement of a particular street, but all of the fifteen streets that were improved under similar arrangements. This abbreviated statement of the action of the city is sufficient, we think, for an understanding of the matters to be considered. On December 22, 1896, this action was commenced to cancel said tax, and enjoin its collection, for reasons which we will now consider.

II. Plaintiff's first contention is that the city was without authority to make this improvement at their expense, for the reason that said chaper 31 of the Revised Ordinances was not in force at the time said proceedings were had. It is claimed that chapter 14, Acts Twenty-second General

Assembly, approved April 10, 1888, making chapter 20, Acts Twentieth General Assembly applicable to cities existing under special charter, had the effect to repeal said ordinance. Section 2 of said chapter 14 is as follows: "That nothing in section one of this act shall be construed or considered as repealing any law now in existence granting authority to any cities incorporated under special charter, but whatever authority upon any of the subjects in the foregoing law is now in existence shall be deemed cumulative to the provisions of said section one hereof. Approved April 10, 1888." Said chapter 20, Acts Twentieth General Assembly, and said chapter 31, Rev. Ord., treat of the same subject, and in many respects in a similar manner. Therefore, if it were not for said section 2 quoted above, it might be said that, when said chapter 20 was made applicable to the city of Dubuque, it had the effect of repealing said ordinance, but not so in view of said section 2. The evident purpose was to retain in force all laws granting authority to cities under special charter. The general authority of this city was derived from its special charter, but the authority to exercise it in a particular manner was derived from the ordinance. We conclude that chapter 31, Revised Ordinances remained in force until the adoption of said ordinance chapter 32, approved November 2, 1891, "An ordinance to provide for giving effect to the provisions of chapter 14." It follows from this conclusion that the city had power to proceed when it did, under said chapter 31, Revised Ordinances, to make this improvement.

III. The plaintiffs, assuming that the city proceeded under said chapter 20, Acts Twentieth General Assembly, and chapter 14, Acts Twenty-second General Assembly, point out several particulars wherein it is claimed the proceeding was not in accordance with said statute; but, as we hold that the proceeding was under said ordinances, we need only inquire whether it was in conformity with the ordinances. Under section 3 of said chapter 31, Revised

Ordinances, it was required that notice be given to bidders "by an advertisement of at least 5 days in the official papers of the city." The notice given was published with the proceedings of the council, and therefore, we may presume, in the official papers of the city; but it was published for four, instead of five days. In the view we take of the case, we need not determine whether this renders the proceedings illegal. It is also contended by the plaintiffs, either that there never has been an established grade upon the portions of Grandview avenue improved, or that, by the action of the council in establishing a grade, it changed the grade without making compensation to abutting owners for damages. We are inclined to hold from the evidence that there had been no previously established grade; therefore no change of grade in the making of this improvement.

IV. The resolution passed March 2, 1891, authorizing this improvement, was not signed by the then mayor of the city, Mr. R. W. Stewart, nor was it returned by him with objections, nor passed over his objections. September 30, 1897, more than six years after its passage, the city council passed a resolution ordering and directing the then mayor, Mr. T. T. Duffy, to sign said resolution, and thereupon he wrote thereon: "Approved Sept. 30, 1897. T. T. Duffy, Mayor." Chapter 192 of the Twentieth General Assembly, then in force, provided: "That the mayor of every city * * * shall sign every ordinance and resolution passed by any city of the first or second class before such ordinance or resolution shall take effect or be in force." Further provisions were made for a mayor's returning the ordinance or resolution with his objections, and for passing the same over his objections, but there was no provision for its taking effect if not returned, as found in section 15, article 3, of the constitution, in relation to bills passed by the general assembly, nor as provided in section 685 of the present Code as to ordinances and resolutions. Chapter 2, Acts Twenty-second General Assembly, made

these provisions applicable to cities organized under special charters. It is certainly clear that under the law as it then stood ordinances and resolutions only took effect when signed by the mayor or passed over his veto. In *Stutsman v. Mc-Vicar,* 111 Iowa, 40, the mayor had returned the resolution with his objections, and, it not being passed over his objections, we held that the resolution was not in force. In *Heins v. Lincoln,* 102 Iowa, 69, we held this requirement that the mayor sign resolutions of the city council before they shall take effect to be mandatory. It is the approval by his signature, or disapproval, with his reasons, by the mayor presiding, that is contemplated, and not the approval or disapproval of one who may succeed him in office. Therefore, the council had no power to authorize Mayor Duffy to approve said resolution; much less to order and direct him to do so. Defendant's counsel insist in argument that to hold that this resolution did not take effect for want of the signature of the mayor would be to put it in the power of the mayor, as the law then stood, to defeat legislation by withholding ordinances or resolutions that had been passed. It is insisted that the change made by the present Code indicates that it was intended by the former law that a resolution or ordinance not approved or returned with disapproval within fourteen days should go into effect. We think the change indicates a different construction of the former law. It is argued that, as more than fourteen days had elapsed between the passage of said resolution for the commencement of the work and the advertisements for bids, the resolution was then in force; but, as we have said, it could not be in force, under the law as it then stood, unless signed by the mayor, or passed over his veto. Said chapter 31, Revised Ordinances, requires that an order for such improvements should be by resolution, which requirement, we have seen, was mandatory, and without it the city could not proceed to make the improvement. The resolution acted upon in this case never took effect, and there-

fore the city council was without authority to proceed in the matter as they did. This conclusion renders it unnecessary that we consider other claims of the plaintiffs, and it follows that the judgment must be AFFIRMED.