THE STATE OF TEXAS EX REL R. H. OSBORN ET AL V. CITY OF MCALLEN ET AL.

No. 6473.   Decided March 11, 1936.
(91 S. W., 2d Series, 688.)

*Sid L. Hardin,* former County Attorney and Ex-officio District Attorney, *Rogers Kelly,* County Attorney and Ex-officio District Attorney for Hidalgo County, both of Edinburg, *E. N. Catlett,* and *J. E. Leslie,* both of McAllen, *D. W. Glasscock,* of Mercedes, and *J. F. Lane,* of Hearne, for plaintiffs in error.

Where an ordinance has been passed by a majority vote of the city council but not signed by the mayor, as required by the city charter, it is not effective. 43 C. J., 534, sec. 830; New York Ry. Co. v. Watterbury, 55 Conn., 19; Long v. Lemoyne Borough, 222 Pa. St., 331; Hall v. Macon, 147 Geo., 704, 95 S. E., 248.

*E. A. McDaniel* and *T. O. Mitchell,* both of McAllen, for defendants in error.

MR. PRESIDING JUDGE RYAN delivered the opinion of the Commission, Section B.

This is a quo warranto proceeding instituted by the State acting through the district attorney of the 79th Judicial District, on relation of certain interested parties against the City of McAllen, its mayor and commissioners as the city's governing body and certain other named city officials, to have declared null and void a certain Ordinance No. 1 extending the city limits approximately one-half mile in every direction from the original boundaries, that the territory sought to be annexed be declared not within the city's limits and that it and its governing body be restrained from exercising jurisdiction thereover and from collecting or attempting to collect taxes thereon.

Trial before the court resulted in judgment for defendants, which was affirmed by the Court of Civil Appeals. 56 S. W. (2d) 297.

The City of McAllen contains a population of more than 5000 inhabitants and was duly incorporated under the provisions of the Home Rule Amendment to the Constitution and statutes thereunder.

Article 1, Sec. 4, of the charter of said city reads as follows:

"Section No. 4. Extending Limits by Action of Board of

Commissioners: The Board of Commissioners shall have power *by ordinance* to fix the boundary limits of McAllen and to provide for the extension of said boundary limits and the annexation of additional territory lying adjacent to said city with or without the consent of the territory and inhabitants annexed; upon the introduction of such an ordinance in the Board of Commissioners and after it has been amended as desired by the Board for final passage, it shall be published in some newspaper in McAllen one time and shall not thereafter be finally passed until at least thirty (30) days has elapsed after said publication, and any citizen of McAllen, or of the territory to be annexed, shall have the right to contest said annexation by filing with the Board of Commissioners a written petition setting out their reasons for said contest, and said ordinance shall not be finally passed until such citizen, or citizens, have had the right to be heard on his, or their, petition, and when said ordinance is finally passed, the territory so annexed shall be a part of McAllen, and the inhabitants thereof shall be entitled to all the rights and privileges of other citizens and shall be bound by the acts, ordinances, resolutions and regulations of said city."

The governing body consists of a Board of Commissioners composed of the mayor and four commissioners (Art. 3, Sec. 1).

The mayor's duties are prescribed by Art. 3, Sec. 13, as follows:

"Section No. 13. Mayor—Powers and Duties of: The Mayor shall be the chief executive officer of McAllen and shall see that all laws thereof are enforced. He shall be clothed with all of the authority that is now, or may hereafter be vested in a Mayor by the General Laws of the State of Texas so far as the same may be applicable and not inconsistent with this Charter. He shall have and exercise full power prerogative and authority acting independent or in concert with the Board of Commissioners as are conferred by the provisions of this Charter, or as may be conferred upon him by the Board of Commissioners not inconsistent with the general purposes and provisions of this Charter, and shall have the power to administer oaths and sign all contracts."

Article 3, Sec. 16 reads as follows:

"Section No. 16. Ordinances—Power to Enact: The Board of Commissioners of said city shall be vested with the power and charged with the duty of making all laws or ordinances not inconsistent with the Constitution of the State of Texas, touching every subject and matter within the local government,

same to include the power to impose fines and penalties for the violation of the same. They shall have the power and authority in the government, management and control of McAllen, which are not especially delegated to some other authority and they may pass any ordinances they may desire delegating any part of their authority and duties to any other person, officer or employee, not inconsistent with the Constitution or Laws of the State of Texas."

Article 3, Sec. 15 reads as follows:

"Section No. 15. Board of Commissioners — Meetings: Quorum: The Board of Commissioners shall from time to time by resolution provide for regular meetings and for call meetings of said Board; and shall provide for the time and place of said meetings. Three Commissioners, or the Mayor and two (2) Commissioners of said Board, shall constitute a quorum for the transaction of any and all business that may be brought before the Board; provided that no bonds may be issued nor no taxes levied except at a regular meeting of the Board, attended by at least three (3) Commissioners and the Mayor, or by four (4) Commissioners without the Mayor. All official sessions of the Board of Commissioners, whether regular or called, shall be open to the public."

Article 3, Sec. 17 reads as follows:

"Section No. 17. Ordinances—Passage: When any ordinance has been passed by a majority vote of the Board of Commissioners present and voting *and signed by the Mayor, it* shall be deemed a law, and shall be published in some newspaper published within McAllen at least once a week for two weeks, but shall become effective from and after the date of its passage; provided, however, that the caption of any ordinance need not be published; and provided further that ordinances granting franchise need not be published in any instance."

"On November 3, 1927, "an ordinance extending the boundary lines of the City of McAllen, to cover and include in said city limits certain lands adjacent thereto, and defining the boundary limits of said city," was read, ordered published in some newspaper of general circulation within the city and laid over for at least thirty days.

Attached to said ordinance is the statement that the same was published in the McAllen Daily Press on November 4, 1927, that all parties who desire to contest the same have had an *opportunity* to be heard and having been heard and more than thirty days had elapsed since the publication it was moved and

seconded that the ordinance be adopted. Also, said motion being put by the Mayor, two commissioners (naming them) voted for its passage, one commissioner (naming him) voted against adoption, and one commissioner (naming him) was present but did not vote, whereupon the motion was declared carried and the ordinance passed and adopted by a majority vote of "the City Council."

■ It thus appears that the mayor and four commissioners were all present, one commissioner and the mayor did not vote, neither did the mayor ever sign the ordinance.

As all ordinances must be approved by a majority vote of those present and voting, and a quorum may consist of three commissioners, it would appear that the requirement of a majority vote has been satisfied in this case, (The State v. Etheridge, 32 S. W. (2d) 829, Com. App.), but something else is required to make the ordinance effective, viz:—*signing by the mayor*, which to our minds is as necessary as a majority vote of those present and voting. The mayor having failed to sign the ordinance, it is ineffective.

The authorities are in unison, that where charters and statutes require it, submission to and approval by the mayor of ordinances or resolutions or certain classes thereof, after they have been passed by the council, are indispensable to their validity, except under circumstances specifically enumerated in the charters or statutes, such as failure of the mayor to act within a designated time after submission for approval or after passage over his veto. Provisions of this character are designed to operate as a check upon hasty, unwise or inexpedient action on the part of the council and are mandatory in character. 43 C. J., p. 532, Sec. 827; Id., p. 534, Sec. 830; 19 R. C. L., p. 892; 2 Dillon Munic. Corp. (5th Ed.), Sec. 578; McQuillin Munic. Ordinances, Sec. 149; 2 McQuillin Munic. Corp. (2d Ed.), Sec. 723.

There is no provision of the charter in question here requiring the approval or signing of ordinances by the mayor or of a veto by him within any designated time.

■ The act of the mayor in his approval of an ordinance or resolution is not a ministerial but a legislative act and the approval must be active and direct, showing his official concurrence in the measure. 43 C. J., p. 534, Sec. 830.

In Altman v. City of Dubuque, 111 Iowa, 105, 82 N. W., 461, the requirement of signature by the mayor was held mandatory and where the mayor failed to sign or veto and return

to the city council for further action the resolution authorizing street improvements, the same was inaffective and the city council was without authority to proceed. Counsel insisted in argument in that case that to hold the resolution did not take effect for want of the mayor's signature would be to put it in his power to defeat legislation by withholding ordinances or resolutions that had been passed, but the court said that under the law as it then stood, unless signed by the mayor, the resolution never took effect, as such provision was mandatory.

Neither will the fact of the mayor's mere presence at the meeting or his approval of the minutes thereof constitute a signing or approval so as to render the proceedings valid, where the charter or law requires his approval or signing. Moore v Perry, 119 Iowa, 423, 93 N. W., 510; Whitney v. Port Huron, 88 Mich., 268, 50 N. W., 360, 126 Am. St. Rep., 291; Long v. Lemoyne Borough, 222 Pa., 311, 71 Atl., 211, 21 L. R. A., (U. S.) 474, 15 Am. Cas., 924; Hall v. Macon, 147 Ga., 704, 95 S. E., 248; Cordilla v. Pueblo, 34 Colo., 293, 82 Pac., 594; Pensacola v. Southern Bell Tel. Co., 49 Fla., 161, 37 So., 820; 2 Dillon Munic. Corp. (5th Ed.), p. 912, Sec. 578.

As said in Mills v. San Antonio, 65 S. W., 1121, w. e. ref., "the approval of the minutes was not a ratification of the acts of the meeting but a mere approval of the correctness of the minutes," furthermore, "the allegations of the petition show that every member of the city council was present at the special meeting, and it may seem that all being present no harm could result in a failure to comply with the terms of the charter. While this has been held in regard to meetings of directors of private corporations, it could not apply to a meeting of a city council, whose members are in the eyes of the law the representatives of the public, whose interests are involved in any legislation enacted or proposed by such council. The charter is mandatory, and not only requires the object of the special meetings to be placed in writing, but also that the call and object shall be entered on the journal by the clerk. It is deemed a matter of such importance that not only should the council be informed of the objects of the call for a special meeting, but it must be spread upon the minutes in order that every citizen of the municipality may be informed also of the object in having the special meeting."

What is said above is directed to Ordinance No. 1.

There appears in the statement of facts what purports to be "an ordinance defining the boundary limits of the city of McAllen and excluding from the present city limits as fixed

and established by an ordinance adopted and passed on the 29th day of December A. D., 1927 and excluding from the corporate limits of the city of McAllen all lands not included within the following metes and bounds," which provides "that the boundary limits of the City of McAllen in Hidalgo Co., Texas, are hereby defined, fixed, and described as follows: And all lands not included within the following metes and bounds are hereby excluded from the City of McAllen." Here follow certain field notes, different from those contained in ordinance No. 1. Said ordinance is No. 200 and also contains the recital:— "this ordinance shall take effect and be in force from and after its passage and legal publications; and the same shall be published once a week for two weeks in some newspaper of general circulation, which newspaper has been regularly and continuously published in McAllen, Texas, for a period of not less than one year prior to said publication," with the notation "Approved as passed by the City Commission, this the 21st. day of May A. D. 1928."

No explanatory plat or map is in the record. It is impossible to deduce from such record whether the field notes of Ordinance No. 200 include the same territory or less or more thereof, than those of Ordinance No. 1.

Plaintiffs in error here (relators below) say in their brief:—

"It is difficult to determine whether the Court based its judgment on the validity of said Ordinance Number One (being the only ordinance complained of by plaintiff and relators in their original petition) or whether the judgment was based upon or rested in the testimony evidenced by Ordinances Number Two Hundred (which is found in the Statement of Facts). Since both related to the same subject matter, evidently, Ordinance Number Two Hundred was passed for the purpose of repealing the former ordinance. The agreement made in the Statement of Facts would indicate that defendants contended before the Trial Court, that such additional territory only, as is embraced within the metes and bounds of said Ordinance Number Two Hundred, was the territory which defendants claimed to be annexed to said City, as such agreed Statement of Facts apparently traces the field notes of such ordinance. However, such ordinance was not mentioned in plaintiff and relators' original petition and apparently was disregarded altogether by plaintiff and relators in the trial of the case except as above stated. The finding of facts, wherein the Court found that said ordinance passed by the Board of Commissioners of said defendant City on the 3rd day of November, 1927, was a

valid and legal ordinance and regularly passed, would indicate that the Court based its judgment on Ordinance Number One. Since the record is in this condition, plaintiff and relators have filed an assignment of error to the effect, 'that if in fact the Court did hold that Ordinance Number Two Hundred was a valid and subsisting ordinance, that the Court erred in thus holding, because, said Ordinance Number Two Hundred is open to two different constructions, one of which construction absolutely conflicts with and contradicts the other construction, and that either construction can be placed upon such ordinance, which renders the same null and void for want of certainty.' We merely make this statement in connection with the nature and result of the suit, to the end that this Honorable Court may have a fair understanding of all the propositions of law upon which this appeal is predicated."

Defendants in error here (respondents below) by way of counter proposition states:—

"Ordinance No. 200 having been duly passed and fixing the boundary of McAllen, and no attack having been made upon the same in the court below either in the pleadings, objections to the testimony, or in any other manner, the same stands as the ordinance fixing the limits of McAllen, and all questions of and concerning Ordinance No. 1 would be immaterial."

It thus appears that Ordinance No. 200 entered into the trial of the case, notwithstanding nothing was claimed under it by the pleadings of any of the parties (plaintiff or defendant) and the sole and entire contest under the pleadings was over the validity of Ordinance No. 1.

Whether the trial court gave any weight to Ordinance No. 200 in deciding that Ordinance No. 1 was legally enacted, is not apparent from the record, his finding on the subject being "that in pursuance of its Charter provision it (the city) did on November 3rd, 1927, pass an ordinance bringing in the territory in question and after having advertised the same in the names and for the length of time as required by its Charter that the said ordinance became final and the territory described in Plaintiffs' petition was declared to be a part of and embraced in the territorial limits of the City of McAllen, that the proposition was not submitted to the vote of the people," his conclusion of law being "That the extension was made in all things as authorized by McAllen Charter and the laws then in force governing such extension, and that it was not necessary under the Charter and laws in force that same should be submitted to a vote of the people in the territory. * * * That the

extension was reasonable," and his judgment being "And all parties having announced ready for trial, the court, after hearing the pleadings of the parties, the evidence introduced thereon and argument of counsel, is of the opinion that the law and the facts are with the Defendants, and that it appears to the court that the extension of the city limits, *as described in Plaintiffs' petition and involved in this suit*, was in all things duly made as required by law, and that same is not unreasonable. It is, therefore, ordered, adjudged and decreed by the court that the Plaintiffs take nothing by reason of this suit, and that the Defendants go hence without day and recover their costs."

■ It is not clear to us why, if the case was tried by the plaintiffs below, on the theory that the extension of limits was governed by Ordinance No. 200, as superseding Ordinance No. 1, and was tried by defendants below, on the theory that because of that ordinance, the defects of Ordinance No. 1 were immaterial, the latter controlled, although superseded by Ordinance No. 200, the court should have upheld Ordinance No. 1, unless the court gave a controlling effect to Ordinance No. 200, notwithstanding it was not pleaded by either party and therefore had no place in the record or trial.

It appears as if one cause of action was pleaded and another proven, though not pleaded.

Judicial notice is not taken of municipal ordinances but they must not only be proven but pleaded like other facts. City of Austin v. Walton, 68 Texas, 507, 5 S. W., 70; 17 Tex. Jur., p. 141, Sec. 13; 19 R. C. L., p. 907, Sec. 205.

It is manifest that the facts in this case have not been properly developed, and therefore it should be remanded, inasmuch as we have concluded that the judgment below should be reversed, and it is so ordered.

Opinion adopted by the Supreme Court March 11, 1936.