**LAKESIDE PARK, LTD., et al., Appellants,**

**v.**

**The STATE of Texas, Appellee.**

**No. 7105.**

Court of Civil Appeals of Texas, Beaumont.

March 12, 1970.

Rehearing Denied April 9, 1970.

Sears & Burns, Houston, for appellants.

W. G. Walley, Jr., Beaumont, for appellee.

PARKER, Chief Justice.

This is an appeal by the landowners from the judgment of the County Court of Jefferson County at Law No. 2 in two condemnation proceedings (consolidated) ini-

tiated by the State of Texas against the partners in Lakeside Park, Ltd. to acquire four tracts of land containing a total of .076 acres for the purpose of widening, straightening, constructing, building, improving and maintaining State Highway No. 73. Trial was had before a jury. All parties stipulated that all jurisdictional prerequisites had been complied with and that the sole issue to be ascertained was the market value of the lands taken. The jury found the total market value of the lands to be $3,825.00. Deducting therefrom the sum deposited by plaintiff in accordance with the award of the special commissioners, judgment was entered awarding the appellants $2,775.00 together with interest from July 19, 1968.

The three qualified appraisers who gave their opinions of market value of the tracts involved testified to the following figures:

| Appellants' Witness | Tract 4–D | Tract 4–E | Tract 4–F & Tract 4–G | Tract 4–H |
|---|---|---|---|---|
| Avant ............... | $6,300.00 | $6,600.00 | $2,600.00 | $25.00 |
| Appellee's Witnesses | | | | |
| Terry ............... | $1,400.00 | $1,400.00 | $ 700.00 | $50.00 |
| Spiegel ............. | 1,000.00 | 1,000.00 | 500.00 | 25.00 |

The jury, in answer to Special Issues Nos. 1, 2, 3, and 4, respectively, found valuations in the following amounts:

| | $1,600.00 | $1,600.00 | $ 600.00 | $25.00 |
|---|---|---|---|---|

———◆———

The verdict of the jury is well within the value opinions of the qualified expert witnesses called by the respective parties, and amply supported by the evidence *admitted* upon trial. Trinity River Authority v. Chain, 437 S.W.2d 887 (Beaumont Tex.Civ. App., 1969, error ref. n. r. e.); State of Texas v. Reeh, 434 S.W.2d 416 (San Antonio Tex.Civ.App., 1968, error ref. n. r. e.); Trinity River Authority v. McMurrey, 411 S.W.2d 422 (Beaumont Tex.Civ.App., 1967, error ref. n. r. e.); State of Texas v. Haire, 334 S.W.2d 488 (Austin Tex.Civ. App., 1960, error ref. n. r. e.). The jury substantially adopted the opinion values of the witness, Terry.

These lands are in the built-up area of the City of Port Arthur, being two miles west and three miles north of the business district. All are on the south side of Highway 73 with Tract 4–D adjoining the highway (next to) 1,200 feet, Tract 4–E adjoining the highway, 1,269 feet, Tracts 4–F and 4–G combined, adjoining the highway, 503.34 feet and Tract 4–H adjoining the highway 50.34 feet. Each tract has a depth of 65 feet. Three 60-foot avenues separate the said lands. The taking is of all. Before the taking the highway was 200 feet wide. Opposite these lands on the north side of Highway 73 is Palomar Addition.

Appellants' witness, Avant, upon direct examination testified that the highest and best use for these properties would be commercial or higher income residential use. With this use being made of the land, he testified that it was worth $3,500.00 per acre. Upon cross-examination, over objection, appellee procured from Avant an admission that the land was zoned Residential A, the most restrictive use under the ordinance. Appellee's witness, Terry, was also permitted to give similar and additional testimony over the objection of appellants.

The objection was that the zoning ordinance would be the best evidence and any testimony from the witness as to its con-

tents or effect would be hearsay. The objection was overruled and appellants given their "running bill" of exception.

On re-direct examination, Avant testified that "you would have to assume a malicious city government to assume that it would not ever be used for any other than residential use." He further testified:

"Q. Do you know of any facts that indicate that the exact zoning would be changed or should be changed by an honest governing body?

"A. I think it would. The circumstances surrounding that property, each circumstances indicate there would be no objection from anyone in this neighborhood to zoning it to commercial use such as the property . . . and there may have been an objection before from, perhaps, potential residential users behind the property; and behind this property now is a borrow source. Across the street it is *commercially zoned property.*" (Emphasis supplied.)

From appellants' brief, we take this fair summary of the testimony given by appellee's witness, Terry:

"* * * that the zoning ordinance classified this property as Residential A, which is the most restricted zoning district, requiring a minimum of 7000 feet of lot area and a 25 foot set-back from the front line of the property and a 25 foot set-back from the rear property line. As a practical matter, no residences could front on Highway 73 because of the set-back lines.

"The only way the property could be developed would be by an extension of the streets shelled from the existing Highway 73 right-of-way to the back end of the property, creating lots with 65 foot frontage on the shelled roads. The tracts apparently would be split by three streets. The witness found sales which would help in arriving at an opinion of the value of the property. He was unable to find any strip sales of residential properties of 65 feet in depth in the immediate area. There were none to his knowledge. The witness placed a value of $50 on Tract 4H, $1400 on Tract 4E, $700 on Tracts F and G combined and $1400 on Tract 4D. In his opinion, since a developer of the subject tracts would have to front his lots on the streets to be extended *form* Highway 73 to the back of the properties, the property would bring less money, because the lots would be long and narrow and would bring less money in the market place. A developer would therefore pay less money for them. The witness considered the possible use of the property for commercial purposes, but felt that because of the lack of commercial development in the area, the commercial use of the subject property was extremely limited and that the highest and best use of the property would be residential.

"On cross-examination the witness testified that the lots in Palomar Addition fronting on Highway 73 brought higher prices because they were zoned commercial.

"In his experience with the City Council of the Zoning Commission, there is no sure thing so far as the zoning is concerned. He does not know of any reason why the City Council would refuse to change the zoning on the subject property."

■ Appellants come forward challenging the action of the trial court in permitting the testimony relating to the zoning ordinance to be considered by the jury. The cited case of City of San Marcos v. Bethke, 420 S.W.2d 803 (Austin, Tex.Civ.App., 1967, error ref. n. r. e.) upon which appellee relies is readily distinguishable. Likewise, we freely concede that *ordinarily* proof of a city ordinance must be made by the introduction of a certified copy of the ordinance. State ex rel. Osborn v. City of McAllen, 127 Tex. 63, 64, 91 S.W.2d 688, 692 (1936). But, in this instance, the ques-

tion for consideration by the jury was the fair cash market value of the land sought to be taken, not the contents of the zoning ordinance. Both witnesses (one for each side) were thoroughly familiar with the contents of the ordinance and appellants do not contend, even now, that either witness was mistaken in his belief as to the contents of the ordinance. The use to which the land could be put—the highest and best use thereof—was the issue for the determination by the jury as going to the market value thereof. As such, the zoning restriction was a material factor for consideration.

The court gave the approved instruction applicable to such a situation, these being the words used:

"You are further instructed that by the term 'market value' as used in this charge, is meant the price which property would bring when it is offered for sale by one who desires to sell but is not obligated to sell, and is bought by one who desires to buy but is under no necessity of buying it, taking into consideration all of the uses to which it is reasonably adaptable and for which it either is or in all reasonable probability will become available within the reasonable future."

Thus, it is to be noted, the court followed implicitly the teachings of Chief Justice Calvert in City of Austin v. Cannizzo, 153 Tex. 324, 267 S.W.2d 808, 814 (1954). We also call attention to this comment found in Rayburn on Texas Law of Condemnation, § 141, p. 429:

"The Cannizzo case supra, would seem to have settled the law upon evidentiary matters that may arise in the future, both on zoning ordinances, and upon Deed Restrictions, and covenants running with the land. It would seem that this pronouncement of the law will as aptly apply to ZONING, as it will to DEED RESTRICTIONS, both upon the admissibility of the evidence and also upon the questions of instructions."

With the evidence disclosing commercially zoned property across the road, the difficulty, if not impossibility, of developing the land as residential property, Avant's testimony concerning the probability of change in the zoning requirement, appellants' point with reference to the admission of the ordinance itself loses force. We have evidence as to value for residential or for commercial uses; we have evidence as to values if it maintains its present classification, or if the classification is changed. The jury was instructed correctly, and the findings of the jury have adequate support in the testimony of qualified witnesses. Even if we concede that there was a technical error in admitting the evidence, which we do not find in this case, it was harmless error. Appellants must do more than show that the ordinance itself would be the best evidence. It must show prejudicial error. In considering this factor, we turn to some of the cases on the question.

A succinct statement of the problem which we face is to be found in Bridges v. City of Richardson, 163 Tex. 292, 354 S.W. 2d 366, 368 (1962):

"If evidence is erroneously admitted, error exists; if its admission was not reasonably calculated to cause and probably did not cause an improper judgment, it is still error but is not *reversible* error. The question of whether a particular error is reversible error depends upon whether it was reasonably calculated to cause and probably did cause an improper judgment and presupposes the existence of error. Aultman v. Dallas Ry. & Term. Co., 152 Tex. 509, 260 S.W.2d 596." [Emphasis by the Court.]

For a general discussion of the subject of harmless error, see Calvert, "The Development of the Doctrine of Harmless Error in Texas," 31 Tex.L.R. 1 (1952), wherein the subject is analyzed carefully. See also, 4 Tex.Jur.2d, Appeal & Error, § 931, p. 548, et seq. We do not discuss the myriad of the decisions relating to the admission of evidence which has been de-

cided by the several Courts of Civil Appeals. First, there are too many on the subject; and, secondly, in determining whether or not prejudicial error has been shown, in Chief Justice Calvert's words, "There is no easy answer." (31 Tex.L.R. at p. 18.)

 For the purpose of our discussion of the authorities, we will assume that it was error for the trial court to permit the witness Terry to testify as to the provisions of the zoning ordinance. (McCormick & Ray, Texas Law of Evidence, § 1563, p. 404.) In so doing, we concur with appellants that the best evidence of the contents of the zoning ordinance was the ordinance itself. In this regard, we discard appellee's proffered excuse that the ordinance was "too bulky."

Even with this concession, appellants have not discharged the burden placed upon them by law, that is, to show that prejudicial and harmful error was committed in the admission of the evidence. We have long since discarded the rule of "presumed error." As was said in Walker v. Texas Employers Ins. Ass'n, 155 Tex. 617, 291 S.W.2d 298, 301 (1956):

"Before an error may be made the basis of reversing a trial court judgment the appellate court must be satisfied that the error complained of 'was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment in the case.'

"Reversal may not be predicated upon a simple showing that error occurred and that the jury returned a verdict in some respects favorable to the party the error was reasonably calculated to help. If it could, the further provision of Rules 434 and 503 that it must also appear that the error 'probably did cause, the rendition of an improper judgment' would be meaningless and pointless.

"A determination of whether the error 'probably did cause, the rendition of an improper judgment' by influencing the jury to return a verdict it probably would not otherwise have returned is to be made from an examination of the record as a whole * * *. [citations omitted] * * *."

A similar holding was made in a condemnation case involving the restriction of cross-examination. State v. Parrish, 159 Tex. 306, 320 S.W.2d 330, 332 (1958), wherein these words were used:

"The reversal of the trial court's judgment is not justified unless an examination of the record as a whole leads to the conviction that the error was calculated to cause and probably did cause the jury to give the answer it did to all issues which will support the judgment. Cloud v. Zellers, Tex.Sup.1958, 309 S.W.2d 806, 808. See also Condra Funeral Home v. Rollin, Tex.Sup.1958, 314 S.W.2d 277, 280(1); Mrs. Baird's Bread Company v. Hearn, Tex.Sup.1957, 300 S.W.2d 646; City of Austin v. Cannizzo, 1954, 153 Tex. 324, 267 S.W.2d 808."

As was said by Chief Justice Calvert in Gomez Leon v. State, 426 S.W.2d 562, 565 (Tex.Sup., 1968):

"Having held that the trial court erred in admitting testimony of the price paid by petitioners for the subject property and of prices paid by the University for other property in the area, the final question to be decided is whether admission of the testimony was prejudicial error. The question is governed by Rules 434 and 503, Texas Rules of Civil Procedure, which provide: '* * * no judgment shall be reversed on appeal and a new trial ordered in any cause on the ground that an error of law has been committed by the trial court in the course of the trial, unless the appellate court shall be of the opinion that the error complained of amounted to such a denial of the rights of the appellant [petitioner] as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case * * *.' Whether particular error was 'reason-

ably calculated to cause and probably did cause the rendition of an improper judgment in the case' is always a judgment call to be made according to the reveiwing court's 'opinion' from a review of the entire record in the case. Texas Power & Light Co. v. Hering, 148 Tex. 350, 224 S.W.2d 191 (1949)."

From a review of the entire record, we do not find prejudicial error in the admission of the testimony now complained of and appellants' points are, therefore, overruled.

Appellants also complain of each of the jury findings as to market value of the four tracts of land. Each finding is challenged with a "no" evidence point as well as a point contending that the answer is so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. Considering only the evidence favorable to the findings, the no evidence points are overruled. Considering the entire record, the other points are likewise overruled.

The judgment of the trial court is affirmed.